1
2
3

**DREHER LAW FIRM**
Robert Scott Dreher, Esq. (CSB #120527)
350 West Ash, Suite 101
San Diego, CA 92101
Phone: (619) 230-8828 / Email: scott@dreherlawfirm.com

4
5
6

**LAW OFFICE OF BLANCHE E. MAINE**
Blanche Elizabeth Amelia Maine (CSB #185718)
13465 Camino Canada, #106-428
El Cajon, CA 92021
Phone: (619) 750-9691 / Email: blanche.maine@gmail.com

7

*[Additional Counsel listed on following page]*

Attorneys for Plaintiffs.

8
9

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18
19

HOPE FOR THE HOMELESS LAKE-SIDE, INC., a California Nonprofit Corporation; BRIAN ALBONE; MICHAEL BISHOP; DANIEL CAPPASOLA; JAMES DATTOLICO; CHARITY DAVIS; JENNIFER GASKA; CHRISTY GILLETTE; STEVEN LEGGOTT; TODD LENT; AMANDA LUTHER; HAROLD LUTHER; JOHN "AUGIE" MARTINEZ; JILL MCCOY; BRITTANY STEBBINS; AUSTIN WHALEY; DAVID WILLIAMS; Individually on Behalf of Themselves and All Others Similarly Situated,

20

Plaintiffs,

21

v.

22
23
24
25

COUNTY OF SAN DIEGO; CITY OF LAKESIDE; CITY OF SANTEE; CITY OF SAN DIEGO; TONY TAVARES; ANN FOX; and DOES 1 – 48, inclusive,

26

Defendants.

**Case No.** 3:24-cv-1009-L-MSB

***SECOND AMENDED CLASS ACTION COMPLAINT* for INJUNCTIVE and DECLARATORY RELIEF AGAINST VIOLATIONS OF THE FOURTH & FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION UNDER COLOR OF AUTHORITY (42 U.S.C. §1983); VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT (42 U.S.C. §12132); and VIOLATIONS OF THE CONSTITUTION and LAWS OF THE STATE OF CALIFORNIA.**

**Jury Trial Requested.**

27
28

*DREHER LAW FIRM*
*350 W. ASH STREET SUITE 101*
*SAN DIEGO, CA 92101*

1

2 *Counsel for Plaintiffs (continued):*

3

4 **MILLER LAW FIRM**

5 Matthew R. Miller (CSB #194647)
6790 Embarcadero Lane, Suite 100

6 Carlsbad, CA  92011

7 Phone: (619) 261-1150 / Email: *Matt@mrmlawfirm.com*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

## **INTRODUCTION**

Homelessness should not come as a surprise to the people managing the County of San Diego and cities within it. The issue has been around for generations:

> *In the shadow of the steeple I saw my people*
> *By the relief office I seen my people*
> *As they stood there hungry, I stood there asking*
> *Is this land made for you and me?*

- Woody Guthrie, *"This Land is Your Land" (1940)*

But as the problem has worsened, the County of San Diego and many of its cities, including Santee and Lakeside, do nothing to solve it. Instead, they express fake surprise while actively ignoring the data showing increasing numbers of homeless people and corresponding decreases in the amount of affordable housing within their jurisdictions. Defendants respond to the data, and the problems it reflects, with very different lyrics from those of Mr. Guthrie:

> *"You're a piece of shit!"*
> *"Lakeside would be a better place without you!"*
> *"Get out of here or go to jail!"*
> *"Leave immediately or get arrested!"*
> *"Do not call back again."*
> *"You can't be here! Go to El Cajon!"*
> *"Get the fuck out of here! There's the answer for you!"*

Rather than create safe places where people without homes can "exist" with their meager possessions, or assist people in finding or obtaining such, as law and common sense would dictate, these Governments entities instead focus their efforts first, and solely, on using criminal statutes to *chase* and *destroy*. They justify the use of Municipal Codes, Local Ordinances, and State Penal Codes in this fashion as protecting "citizens' health and safety," while ignoring the irony of the fact that their actions are instead actively and willfully *endangering* and *harming* the "health and safety" of Citizens who have nowhere to sleep, live, or be. Defendants use "health and safety" as a pretext, and reject the notion that homeless people are "citizens."

DREHER LAW FIRM

350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiffs bring this putative class action to challenge the policy and custom of "homeless sweeps," where the Defendants, and their agencies and agents, seize and destroy the personal belongings of homeless San Diegans residing outdoors ("homeless residents") without due process and force them to move along from relatively established locations, depriving some of the County's most vulnerable residents of their basic necessities and leaving them endangered and in peril.

The Defendants carry out hundreds of homeless sweeps per year. During these sweeps the Defendants seize and destroy items that are critical to homeless residents' survival, including warm clothing, medications, bedding, and personal documentation (i.e. identification cards and birth certificates) needed to access public services, secure housing, seek employment, and apply for public benefits.

The Defendants consistently fail to give adequate, timely notice to homeless residents in advance of sweeps and, in many instances, do not give any notice at all. In cases where the Defendants do provide advance notice of a sweep, the notice does not state the basis for the sweep, offer any avenue for homeless residents to contest or avoid the sweep, or sufficiently alert homeless residents to the risk that they may have their personal property seized and destroyed during a sweep.

The Defendants do not offer any kind of post-deprivation mechanism for lawful owners to reclaim their personal property that was taken by Defendants. Instead, the sweeps teams throw homeless residents' belongings into a sanitation truck and summarily destroy them with the trucks' compactors.

The Defendants also forcibly displace the homeless residents during sweeps, making them relocate from sites where they have sought shelter and security.

The Defendants carry out sweeps without having or following proper written policies for doing so, or with facially inadequate and unconstitutional policies, and nevertheless deviate from such policies in practice in ways that are unlawful and unconstitutional.

Defendants purport to conduct sweeps under the guise of addressing sanitation and safety conditions. The reality, however, is that displacing homeless people and seizing and destroying their personal belongings does nothing to advance these goals.

Organizational Plaintiff Hope For the Homeless, Lakeside ("HFTH-L") is a direct services provider that renders assistance to homeless East San Diego County residents who experience homeless sweeps and has diverted significant organizational resources to doing so.

The Individual Plaintiffs are homeless East San Diego County residents who have been subjected to numerous sweeps and property destruction events, and are at imminent risk of being subjected to additional homeless sweeps in the future. Defendants' sweeps have violated the rights of Plaintiffs – and all similarly-situated persons – under the Fourth and Fourteenth Amendments to the United States Constitution, as well as Article 1 of the California Constitution, and the laws of the State of California.

Defendants have been deliberately indifferent to the violations of Plaintiffs' rights and have knowingly and intentionally facilitated displacement of homeless San Diegans and destruction of their property.

Indeed, Defendants' actions appear designed to undermine and do the opposite of their express mandates and obligations under Welfare & Institutions Code §17000 to "*relieve and support all incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident*" who reside in San Diego County.

This lawsuit arises out of the ongoing policies and practices of the Defendants joining together to regularly and repeatedly chase homeless people "away," by raiding their sleeping sites and taking and destroying their property, in a coordinated effort to make it impossible for homeless people to live and exist, while simultaneously refusing to provide any other places for these people to go.

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

Defendants conduct these raids without proper or adequate notice and in a manner designed to prevent people from retaining or reclaiming their personal property. The raids are rarely, if ever, preceded or accompanied by any efforts by Defendants to help or assist the homeless people who will be subject to them. Defendants' actions are intended solely to make homeless people "disappear."[1]

This land <u>is</u> made for all of us, as Mr. Guthrie correctly noted. Accordingly, Plaintiffs, on behalf of themselves and all similarly-situated Citizens, ask the Court to Order these Defendants to take the only correct, legal, ethical, and just actions – (1) to cease taking and/or destroying Plaintiffs' and others' property without providing any proper and reasonable method for these unhoused citizens to retain and/or retrieve it; (2) to create sufficient, adequate, and accessible Safe Places for all their unhoused Citizens to be and to store their possessions; (3) to stop raiding, sweeping, chasing, threatening, arresting, and criminalizing unhoused Citizens unless and until such Safe Places first exist, accessible and available for all of these people without hassle or delay; and (4) to stop endangering the health and safety of homeless Citizens, and instead properly comply with their obligations under Federal and State law.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over these claims for relief pursuant to 28 U.S.C. §1331 and §1343(a) and 42 U.S.C. §1983. Supplemental jurisdiction over Plaintiffs' state law claims exists pursuant to 28 U.S.C. §1367.

2. Venue is proper in the Southern District of California because all Defendants reside in the District and all the events giving rise to Plaintiffs' claims occurred in the District. The relief Plaintiffs seek is within this Court's power to grant.

---

[1] *"Could it be that the real reason I pretended to ignore a man in need was because I was trying desperately not to see him as a human being for whom I was responsible?"* Kate Cohen, <u>Washington Post</u> <u>https://www.washingtonpost.com/opinions/2023/12/29/real-reason-beggars-giving/</u>

**DREHER LAW FIRM**
**350 W. ASH STREET SUITE 101**
**SAN DIEGO, CA 92101**

## CLASS ACTION ALLEGATIONS

3. Plaintiffs bring this action on their own behalves and on behalf of all other persons similarly situated pursuant to Fed.R.Civ.P. 23(a) and 23(b)(2). The Class of people that Plaintiffs represent consists of all those persons in the region of East San Diego County that contains the City of Santee and the unincorporated areas of the City of Lakeside, and adjacent areas thereabouts, who: (1) have been the subjects of Defendants' sweeps, citations, warnings, chase-away efforts, property seizures, destructions, takings, and/or confiscations, and/or other action(s), and repeated threats thereof; (2) were homeless at the time of Defendants' enforcement actions and threats thereof; and (3) because of such homelessness had nowhere else to place themselves or their belongings except on public property at the time(s) of Defendants' action(s).

4. Plaintiffs also bring this cause of action on behalf of a subclass, referred to as the "Disability Subclass," or "Subclass," which is defined as: All Class Members who have a "disability" as defined under the ADA, 42 U.S.C. §12102. Plaintiffs **ALBONE**; **BISHOP**; **GILLETTE**; **LEGGOTT**; **McCOY**; and **WHALEY** have one or more "disabilities" and are considered "disabled" as defined under 42 U.S.C. §12102, and are members of and included in the Disability Subclass.

5. This action meets all four elements of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Additionally, this suit may be maintained as a Rule 23(b)(2) class action because Defendants have acted on grounds that apply generally to the Class, so that final injunctive and/or declaratory relief is appropriate respecting the Class as a whole.

6. The members of the Class and Subclass are numerous such that individual joinder of all Members is impracticable.[2] The Class is comprised of hundreds of individuals who are homeless in the region of East San Diego County that contains

---

[2]   Fed. R. Civ. P. 23(a)(1).

DREHER LAW FIRM

350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

the City of Santee and the unincorporated areas of the City of Lakeside, and adjacent areas thereabouts, and who have been wronged by Defendants' improper actions. Joining all these individuals in this lawsuit is impractical and unnecessary. In addition, Plaintiffs believe that the Subclass consists of hundreds of homeless individuals based on the high number of persons with disabilities found in surveys of the homeless population in San Diego. In fact, "Countywide, only 10 percent of people have disabilities, while people with disabilities make up 58 percent of the homeless population."[3]

7.   Questions of law and fact are common to the Class.[4] The claims asserted "depend upon a common contention of such a nature that it is capable of class-wide resolution...",[5] and show that the Class is affected by a "general policy" on the part of the defendants. The Class is united in its interests with respect to proof of Defendants' conduct, the alleged effects caused by Defendants' actions, and whether Defendants' actions violate the law and Plaintiffs' constitutional rights.

8.   Plaintiffs assert claims typical of the Class.[6] Class Representatives have the same essential characteristics as the Class, in that they are, or were, homeless at the times of Defendants' actions, and they had nowhere else to place themselves or their belongings other than public property. The proposed Class is united in the factual questions underlying this case: whether Defendants are improperly taking, destroying, and/or failing to return Plaintiffs' property; whether Defendants are endangering the health and safety of Plaintiffs and Class Members; whether there are insufficient services and/or storage facilities provided to accommodate Plaintiffs and the Class Members and their possessions; whether some belongings (blankets,

---

[3]   Warth, Gary. "County's Homeless: Disabled, 55 and older and Black." SD Union Tribune (September 15, 2020) (*https://www.sandiegouniontribune.com/news/homelessness/story/2020-09-15/countys-homeless-disabled-55-and-older-and-black*).

[4]   Fed. R. Civ. P. 23(a)(2).

[5]   *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2553 (2011).

[6]   Fed. R. Civ. P. 23(a)(3).

tarps, medicine, etc.) qualify as "basic human needs" for people experiencing homelessness; whether Plaintiffs are capable of complying with Defendants' threats and demands, as currently promulgated and enforced; and whether Defendants operate under a policy of systematically taking such illegal actions against the Class. Factual differences in Plaintiffs' individual respective circumstances are not legally significant to the constitutional claims asserted in this action and do not defeat typicality, nor is there unusual treatment from Defendants that defeats the typicality of the claims. The Class Representatives' interests "align with the interests of the Class," and they have endured the same courses of conduct directed against the Class.[7] Class Representatives seek injunctive and declaratory relief to protect the civil rights of the Class, and they seek no individual gain in the form of damages or other relief separate from the Class, nor do they assert individual claims that would disadvantage the Class.

9.  Class Representatives will fairly and adequately represent the interests of the Class and have no interests antagonistic to those interests.[8] Plaintiffs' interests are aligned with those of the Class Members, all of whom stand to benefit from the relief sought in this action. Plaintiffs have retained lawyers who are competent and experienced in class action litigation, who will zealously represent the interests of the Class and its Members. Class Representatives have agreed to represent the interests of the entire Class, are dedicated to taking an active role in this litigation and are committed to fulfilling their responsibilities to the best of their ability, and participating in all phases of this lawsuit.

10. Plaintiffs' Counsel are qualified under the factors of Fed.R.Civ.P. 23(g)(1)(A). Counsel have spent significant time investigating facts and identifying potential claims in this action, including interviewing Class Members; have

---

[7] *Just Film, Inc. v. Buono,* 847 F.3d 1108, 1117-18 (9th Cir. 2017).

[8] Fed.R.Civ.P. 23(a)(4).

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

successfully handled class action and other complex litigation matters in the past, including the types of civil rights claims asserted in this action; have extensive knowledge of applicable civil rights laws; and are committed to spending the time and resources necessary to effectively represent the entire Class.

11. These are the types of large-scale and widespread constitutional claims that fall within the purview of F.R.Civ.P. 23(b)(2), allowing the Court to address constitutional issues while providing access to justice for displaced and vulnerable people who would not otherwise be able to avail themselves of the judicial system. The disposition of these claims in a class action will benefit all the parties to the case, and all the citizens of the County of San Diego, by ensuring proper treatment of all County residents by its governmental entities and agents. Disposition of Plaintiffs' and proposed Class Members' claims will also provide substantial benefits to the Court, allowing it to address a systemic issue in one case, rather than having to address potentially hundreds of related civil rights actions individually.

12. Further, class treatment will permit the adjudication of claims by many Class Members who could not afford to individually litigate their claims or seek to enforce or vindicate their rights against the governments' improper actions. There are no difficulties likely to be encountered in the management of this case which might preclude its maintenance as a class action, and no superior alternative exists for fair and efficient adjudication of this matter. This action will promote orderly and expeditious administration and adjudication of the claims, economies of time, effort and resources will be fostered, and uniformity of decisions will be insured. Absent a class action, Class Members will continue to suffer threats, injuries, and other harm, and Defendants' violations of law will continue without remedy.

13. The people whom Plaintiffs represent are in dire need of the relief sought, as they have been, are being, and will continue to be harmed by Defendants' illegal actions. The rights at stake are fundamental, and absent class certification, these people have no way to address ongoing violations of their civil rights.

14.  Furthermore, it is not just the Class Members who will benefit from the relief sought herein; all citizens of San Diego County will benefit from an Order which effectively compels the Defendants to properly follow the law and do more than waste public funds and public efforts in their illegal efforts to "sweep" and chase their Citizens away.

## THE PARTIES

### A. Plaintiffs.

15. Plaintiff **HOPE FOR THE HOMELESS LAKESIDE ("HOPE")** is a 501(c)(3) nonprofit corporation organized and existing under the laws of the State of California and doing business in San Diego's East County, California. HOPE's mission is to care for the unhoused residents of San Diego's East County while recognizing the dignity and human rights of unhoused people. Through community organization and advocacy, HOPE provides basic necessities to unhoused residents of Santee and Lakeside and co-sponsors events with other nonprofits such as Think Dignity to provide showers, warm meals, survival gear, and hygiene products. HOPE's work envisions a County in which every human being can have and maintain decent, habitable, safe, and secure housing, and this work requires daily engagement with unhoused communities of Santee and Lakeside. HOPE's mission includes engaging volunteers and donors to provide unhoused people with the basic necessities needed to survive while living unsheltered, and ultimately have a chance to exit homelessness. Over the past year, HOPE's work has been increased and hampered and undone by Defendants' criminalization and property-destruction practices that have the effect of undermining and discouraging such work.

16.  Plaintiff **BRIAN ALBONE** lives in Santee and at all relevant times was and is homeless as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C § 11301 et seq., inasmuch as he lacks a fixed, regular, and adequate nighttime residence.

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

17. Mr. ALBONE is a professional tree trimmer who worked for over a decade with Ace Tree Removal until the owner passed away and left Mr. ALBONE the business. He worked hard to keep that business thriving, but when his wife, Rose, passed away in 2019 of COPD, Mr. ALBONE fell into a deep depression, and attempted suicide because he "*didn't want to live without her*." He lost the business and was evicted from the apartment he had shared with his wife, and soon was forced to begin living on the streets. Not having a place to live makes it impossible for Mr. ALBONE to find full-time employment. Mr. ALBONE is disabled due to severe depression and bipolar disorder, lives in constant fear of losing his remaining possessions, and is struggling with ulcers due to the constant stress he endures. He has been the subject of repeated sweeps by Defendants at the San Diego River Bottom in Santee, is relentlessly threatened by them with arrest and citation for illegal lodging and trespassing and is constantly ordered to "*Move along!*" Defendants, with no prior notice, took from him all his clothing, bicycle, tools, tree-trimming gear, and all his family photographs including the only remaining pictures he had of his parents. Defendants never gave Mr. ALBONE any opportunity to take, or keep, or recover his belongings that they took, despite his requests. Defendants have never offered him any helpful services or a place to sleep safely.

18. Plaintiff **MICHAEL BISHOP** is a resident of the County of San Diego and at all relevant times herein was and now is homeless as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C §11301 et seq., inasmuch as he lacks a fixed, regular, and adequate nighttime residence.

19. Mr. BISHOP is a carpenter and a paver by trade. Covid caused the loss of much of his employment, and he began living out of his car after his wife died and he could no longer afford their apartment. Eventually Mr. BISHOP, who is disabled, lost his car and was forced to live on the streets in his hometown of Lakeside near the San Diego River Bottom and the Sand Pits. He went to this spot because it

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

seemed out-of-the-way and private, such that he would not suffer the indignities and stigma of being homeless that he saw others enduring. But such was not the case.

20. On or about July 3, 2023, Mr. BISHOP's encampment was swept by the Defendants and their agents. As Mr. BISHOP watched the Defendants rummage through his belongings, he overheard one of their agents saying, "*Where is the good stuff?*" Defendants threw most of Mr. BISHOP's important documents and possessions into the trash truck during this sweep, but he saw one of the Defendants' agents taking and placing a box of his more valuable belongings, apparently "*the good stuff*") inside their supervisor's truck cab. Those things were not thrown away, nor were they offered for retrieval, and they included valuable and irreplaceable items such as his great-grandfather's pocket-knife, his family photographs including his children's school pictures, jewelry, and watches. Mr. BISHOP also lost important documents that are difficult to replace (even if one is not unhoused), including his driver's license, social security card, birth certificate, and court papers. During the time Mr. BISHOP has been unhoused, he has been harassed many times by Defendants and their agents, and been issued citations for illegal lodging (Cal. Penal Code §647(e)), while never being offered any shelter, services, or alternatives. Recently, Mr. BISHOP was provided a hotel voucher after his counsel repeatedly requested accommodations pursuant to the Americans with Disabilities Act. Unfortunately, Mr. BISHOP has been placed at Hotel Circle and removed from his East County support network and community, which makes it nearly impossible for him to receive support, assistance or to seek employment in the area where he has connections and has long resided.

21. Plaintiff **DANIEL CAPPASOLA** is a resident of the County of San Diego and at all relevant times herein was and now is homeless as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C §11301 et seq., inasmuch as he lacks a fixed, regular, and adequate nighttime residence.

22.  After a series of tragedies including the death of his beloved grandfather, Mr. CAPPASOLA fell into a deep depression and was unable to work. He ultimately lost his driver's license due to an unpaid ticket. The unfortunate events continued, leading him to becoming homeless and living under the highway 67 Bridge in Lakeside in June 2023, when Defendants CALTRANS and their agents CHP, SDPD, and Alpha Project descended upon his encampment for an early-morning sweep.

23.  Although a so-called "Notice" poster of the sweep had been placed at the site stating that any property of value found in the "sweep" would be stored for 90 days, this didn't happen. Instead, Defendants threw all of Mr. CAPPASOLA's personal property into a trash compactor truck. And in yet one of the many ironies of Defendants' actions, Defendants left actual "trash" on the ground there.

24.  Mr. CAPPASOLA observed Caltrans personnel, SDPD officers, and Sheriff's deputies sort through and place some of the most valuable items from the site into their vehicles. When he attempted to attempt to reclaim these belongings pursuant to the posted "Notice," nothing was available or provided to him.

25.  Plaintiff **JAMES DATTOLICO** is a resident of the County of San Diego and at all relevant times herein was and now is homeless as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C § 11301 et seq., inasmuch as he lacks a fixed, regular, and adequate nighttime residence.

26.  Mr. DATTOLICO is a native San Diegan and worked in construction and as a welder. Unfortunately, he lost his job during Covid and has since struggled to find full-time employment, and consequently became homeless.

27.  Mr. DATTOLICO lives in various areas of Santee, moving constantly in order to avoid harassment and "sweeps" by Defendants. His efforts are not always successful, and he is repeatedly subject to such harassment and sweeps. Defendants typically arrive with a large pick-up truck, with which they take all of his and others' belongings while offering no notice, time, or opportunity to gather and take their possessions. Those items, including valuables, medications, photos, and important

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

documents such as his driver's license, are always taken by Defendants and trashed; never returned to him or held for recovery. During these sweeps, Mr. DATTOLICO is always told by Defendants to "*move along or you'll be cited and arrested.*" But he is never told <u>where</u> he can go where he would <u>not</u> be subject to citation or arrest. Nor is he given any information about where or how to recover his seized items.

28.  Plaintiff **CHARITY DAVIS** is a resident of the County of San Diego and at all relevant times herein was and now is homeless as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C § 11301 et seq., inasmuch as she lacks a fixed, regular, and adequate nighttime residence.

29.  Ms. DAVIS graduated from Crawford High School and then attended S.D. City College studying Child Development and Physical Education. Her education was interrupted when she became pregnant and got married, but that marriage ended when her husband became abusive to her and their children. She was unable to finish her education, work, and care for the children alone, and her ex-husband's mother was able to get the kids removed from Ms. DAVIS' custody and move them away to Idaho. "*My kids were my world,*" she says. The loss of her children pushed Ms. DAVIS into a deep depression, and she found herself homeless as a result.

30.  Ms. DAVIS now suffers repeated harassment by Defendants for being homeless. Her attempts to safely sleep, exist, and recover have been derailed by Defendants' repeated raids, sweeps, and threats of citation, arrest, and jail if she does not "*move along,*" although she's never been offered anyplace to "*move along"* to.

31.  Ms. DAVIS was forced to move from an encampment in Lakeside after a sweep by Defendants and their agents, including the SD Sheriff's Department, Lakeside River Park Conservancy, and Caltrans. Their sole "offer of help" was telling her to "*move to Santee.*" However nothing changed after she did so – Ms. DAVIS continued to experience the same problems with the authorities in Santee, frequently without proper notice and with no offers of help or shelter. On July 19, 2023, without prior notice, Ms. DAVIS was awakened near the Santee river bottom

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

in the early morning hours by the SD Sheriff's Department, Alpha Project, and Santee city employees. Despite her protests and requests to be allowed to gather her things, they began indiscriminately tossing all her personal belongings into a trash truck, without sorting or examining such items, which included her deceased father's ring, her dentures, photos of her children, her bicycle, clothes, shoes, and other possessions. Ms. DAVIS tried to go inside her tent to take some of her important items but was physically prevented from doing so by a SD Sheriff's Deputy, who then threatened her with arrest for "illegal lodging" if she didn't leave within the hour. Defendants also took her two cats, "Shadow" and "Racquet."

32. Plaintiff **JENNIFER GASKA** is a resident of the County of San Diego and at all relevant times herein was and now is homeless as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C § 11301 et seq., inasmuch as she lacks a fixed, regular, and adequate nighttime residence.

33. Ms. GASKA is a longtime resident of Lakeside and the mother of twin boys. She fell on hard times after a difficult divorce left her without steady housing or co-support. She struggles with depression, anxiety, and nightmares, making it difficult for her to get a good night's sleep or steady work, increasing her difficulty finding services or a home. She is also forced to live in a heightened state of fight-or-flight due to Defendants' constant harassment, threats, and actions.

34. Ms. GASKA has had her most valued personal property taken during Defendants' sweeps. Without providing notice or any opportunity to keep, take or recover any of her survival gear, blankets, food, and clothes, photographs of her sons, her jewelry, and books, Defendants repeatedly confiscated and threw everything away in a trash truck while they forced her to watch helplessly. On one occasion, Defendants stormed into Ms. GASKA's sleeping site early in the morning, awakening her. She immediately needed to "relieve herself" and said so, but was forced to stay at her site and forego such bathroom break. Defendants had a mobile "porta-potty" with them, and she asked if she could use it.

35. Despite the "porta-potty" being unused, Defendants said "*No!*" and then laughed at Ms. GASKA when she could no longer hold-in and involuntarily urinated on herself.

36. Plaintiff **CHRISTY GILLETTE** is a resident of the County of San Diego and at all relevant times herein was and now is homeless as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C § 11301 et seq., inasmuch as she lacks a fixed, regular, and adequate nighttime residence.

37. Mrs. GILLETTE, age 51, is a widow and mother of two deceased children. She worked as a waitress until 2018 when her health took a bad turn. She then lost her job and her residence and has been unable to find new work or housing. She is disabled and cannot walk without the use of a metal "walker" device. She suffers from bipolar and schizoaffective disorders, and struggles with night terrors, which have become aggravated by her unhoused and vulnerable situation.

38. In 2022, Mrs. GILLETTE was sleeping at a secluded public property in a remote area near the Santee Drive-In Theater. In the early morning hours, Defendants' Sheriff's Deputies descended upon her sleeping site and awakened her. Then, they informed her that "*you will be arrested if you do not leave immediately!"* They did not inform her of any opportunity to find services or a safe place to sleep. The Deputies also refused to permit her to collect or take any of her possessions.

39. Mrs. GILLETTE explained that she could not walk without her "walker" and that therefore she could not follow their instructions to "*leave immediately*" without it, and she asked if she could take it. The Defendants refused her request, and instead forced her to watch as they threw her "walker," along with everything else, including her husband's and son's cremated ashes, into their trash bins. They did, however, helpfully repeat their threat that "*We will arrest you if you don't move along!"* Without the assistance of her walker, Ms. GILLETTE was forced to crawl on the ground away from the area.

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

40. In addition to her "walker," Defendants trashed all of Ms. GILLETTE's clothes and blankets, and all of her documents including her State ID and social security cards, tax forms, and birth certificates. They also took her few remaining photos of her with her husband and son, ensuring that she had nothing left to help remember or memorialize them.

41. Plaintiff **STEVEN LEGGOTT** is a resident of the County of San Diego and at all relevant times herein was and now is homeless as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C § 11301 et seq., inasmuch as he lacks a fixed, regular, and adequate nighttime residence.

42. Mr. LEGGOTT was born and raised in SANTEE. He's worked as a machinist for companies such as Rohr Industries, Teledyne Ryan Aeronautical, and Kahl Scientific in El Cajon prior to the death of its owner. After the owner of Kahl Scientific passed away, the company eventually went bankrupt, and Mr. LEGGOTT found himself without employment for the first time in his life. Mr. LEGGOTT, who is disabled, was thus suddenly unable to pay for his housing, support, a car, or other necessities, and found himself living on the streets, homeless. He applied for work with, and was hired by, Home Depot, Walmart, and Target, but when they found out he had no permanent address, they fired him. Thereafter he quickly began receiving "illegal lodging" (PC §647(e)) citations from Defendants.

43. In early July, 2023, Defendants swept-in to Mr. LEGGOTT's campsite without prior notice. They refused to give him any opportunity to collect his belongings. He was forced to watch, helplessly, as they went through his belongings, kept for themselves things they felt had value, and tossed everything else into trash receptacles. A Sheriff's Deputy threatened him, saying: "*Leave or get arrested!*" They provided no notice or information of where, when, or how to recover his items that they were taking.

44. Among the items Defendants took from Mr. LEGGOTT were his tent, sleeping bag, clothing, boots, flashlights, ice box, bicycle, work tools, and cellphone. They also took and destroyed family photos, his deceased dad's ring, and his yearbooks from Santana High School with handwritten messages from friends and teachers. They also took his birth certificate, social security card, and his dentures.

45. On Friday, October 6, 2023, Defendants repeated their actions, arriving at Mr. LEGGOTT's campsite in the early morning. They again threatened to arrest him if he did not leave. They offered no help of any kind, and said only that if he returned to this area, he would be arrested. He was given no advance notice of this sweep, and again was denied any opportunity to collect or recover his newly-acquired personal belongings. Defendants again threw it all away into a large dumpster.

46. Plaintiff **TODD LENT** is a resident of the County of San Diego and at all relevant times herein was and now is homeless as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C § 11301 et seq., inasmuch as he lacks a fixed, regular, and adequate nighttime residence.

47. MR. LENT is a resident of Lakeside. He does his best to stay out of the public's sight, often sleeping under the Highway 67 Bridge or behind Burger King off Maine Avenue. Over the past several years, Mr. LENT has been subject to repeated sweeps and property confiscations by Defendants, without warning or opportunity to gather or keep his belongings or recover them from Defendants after confiscation. Instead, he is threatened with citation or arrest unless he "*moves along!*" Mr. LENT has lost multiple phones due to Defendants' unlawful actions, along with his clothes, shoes, rain and cold weather gear, tents, his custom-made bicycle, his work tools, a Dell computer, a laptop, his birth certificate and driver's license, his dentures, and a treasured 1953 physics book.

/ / /

48.  Plaintiff **AMANDA LUTHER** is a resident of the County of San Diego and at all relevant times herein was and now is homeless as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C § 11301 et seq., inasmuch as she lacks a fixed, regular and adequate nighttime residence.

49.  Ms. LUTHER was born and raised in SANTEE. She is the mother of two young children who have been placed in foster care due to her current situation of homelessness. Ms. LUTHER lost the apartment she was renting after she broke up with her boyfriend and could no longer afford such, and due to financial constraints and unaffordable rents Ms. LUTHER was unable to secure new housing for herself and her children.

50.  Ms. LUTHER has been repeatedly harassed and cited by the Defendants, including the Sheriff's Deputies, CHP, and Santee City Workers during their sweeps, and her pleas with them not to destroy her belongings were and are ignored.

51.  When Ms. LUTHER was 7 months pregnant, Defendants impounded her legally-parked Ford Explorer from in front of O'Reilly Auto Parts in Lakeside at 10:30 in the morning. Despite her requests, Defendants refused to allow her to take the vehicle. At the time, Ms. LUTHER was living in the vehicle and had no money to pay the impound fee charged by Defendants. The Sheriff's deputy orchestrating the impound didn't offer any services or options, but he did take the time to inform Ms. LUTHER that she was "*[A] piece of shit and you're going to lose your child anyway!*" and that "*Lakeside would be a better place without you!*" Ms. LUTHER was then forced to begin living outside, on public property, while pregnant.

52.  Ms. LUTHER resides at the San Diego River Bottom in Santee with her father and a small community of unhoused individuals who have formed a "family" to help and protect each other. She has tried to obtain reasonably habitable shelter, but without success.

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

53. Ms. LUTHER has been repeatedly harassed by the Defendants, including the SD Sheriff's Department, CALTRANS, Alpha Project, and the Cities of SANTEE and LAKESIDE, amongst others, for being homeless and forced to sleep outside. During sweeps of her encampments, including those in July 2023, Defendants have taken all of Ms. LUTHER's survival gear including tents, sleeping bag, blankets, clothes, bicycle, and food, and destroyed her ID cards and other important documents and valuable items, including birth certificate, her daughter's first tooth, her son's birth certificate, jewelry, her photographs of children and family members, and a treasured gift from her deceased uncle, an 1888 horoscope book. Defendants have offered no opportunity or information about how, when, or where to recover the items they took from her.

54. Plaintiff **HAROLD LUTHER** is a resident of the County of San Diego and at all relevant times herein was and now is homeless as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C § 11301 et seq., inasmuch as he lacks a fixed, regular, and adequate nighttime residence.

55. Mr. LUTHER was born and raised in San Diego's East County. He is a 59-year-old father and a grandfather. After many years working in construction, his construction work was no longer sufficient to enable him to afford his rising rent payments, and eventually became homeless – now more than a decade ago.

56. Over the past several years, Mr. LUTHER has been harassed repeatedly by the Defendants and their agents. This has included being threatened with arrest or citation, and being told to "*Move!*" No reasonable prior notice of these sweeps was or is ever provided by Defendants. He has been cited and arrested for "illegal lodging" on numerous occasions and he has been forced to watch as Defendants remove and destroy his survival gear and irreplaceable belongings. Defendants have placed some of his more valuable property inside the front cabs of their trucks and patrol vehicles. None of these items has ever been made available for return to him.

57.  During a July 2023 "sweep" of his homeless encampment by Defendants City of Santee, SD Sheriff's Department, and their agents, many of Mr. LUTHER's items taken and/or trashed by Defendants were items he had acquired with the help of Plaintiff HOPE as replacements for items previously taken by Defendants. He has had tents, work and construction tools, fishing poles, tackle boxes, sleeping bags, clothes, food, 3 scooters, and 4 motorized bicycles, amongst other items taken and thrown away by Defendants. They have also taken his irreplaceable belongings including jewelry, his father's watch, and photographs of deceased family members.

58.  On November 18, 2024 Defendants and their agents and contractors in Santee were engaged in what they described as "abatement" efforts. There was no posted or other prior "notice" of such efforts. At that time Defendants took Mr. LUTHER's fishing poles and tackle boxes. Mr. LUTHER attempted to recover his property taken by Defendants but such attempts were rejected.

59.  On these occasions, Defendants threatened Mr. LUTHER with arrest while refusing to permit him to take any of his possessions. They provided him no information about accessible services or places where he could live or sleep or store his possessions. Instead, their sole offer of "help" was: "*Leave now or go to jail!"*

60.  Plaintiff **JOHNNIE "AUGIE" MARTINEZ** is a resident of the County of San Diego and at all relevant times herein was and now is homeless as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C § 11301 et seq., inasmuch as he lacks a fixed, regular, and adequate nighttime residence.

61.  Mr. MARTINEZ is the father of nine children. He worked driving a forklift at Port of San Diego for many years, but Covid hampered his employment, and two years ago he was forced out of his home due to rising costs of living, increasing rent, and lack of sufficient work and income to pay such. He works odd construction jobs trying to get back on his feet and out of the cycle of homelessness. His youngest son is on the autism spectrum and requires special educational services. Until becoming homeless, he played an active role in his son's life. Now he is unable to do so.

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

62.  Since becoming homeless, Mr. MARTINEZ has been the subject of repeated sweeps by Defendants at the San Diego River Bottom in Santee. He is under the constant threat of arrest and citation for alleged "illegal lodging" and "trespassing." During the past year, the City of Santee has posted several purported "eviction" notices near his encampment, listing "dates" on which these "evictions" would occur. Yet, more often than not, Defendants do not come on the date(s) indicated, and instead arrive days or weeks later without additional notice, seize all his and others' possessions, including survival gear and important papers, and then threaten all of them with arrest and citation if they do not leave. And they refuse to make the property available for return to Mr. MARTINEZ. Instead they simply destroy it.

63.  Plaintiff **JILL McCOY** is a resident of the County of San Diego and at all relevant times herein was and now is homeless as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C § 11301 et seq., inasmuch as she lacks a fixed, regular, and adequate nighttime residence.

64. Ms. McCOY is a loving single mother and grandmother who graduated from welding school and worked as a mechanic for the Nissan Body Shop in El Cajon. She was also employed as a professional caretaker and animal keeper. She and her adult son became unhoused shortly before Covid. While sheltering outside at the San Diego River Bottom, Ms. McCOY suffered a stroke and was lifted by a crane for emergency medical treatment. She later learned that the Fire Department made a training video using her incident without her knowledge or consent. Since suffering the stroke, Ms. McCOY is disabled and has been unable to work due to continued debilitating conditions and symptoms that limit her ability to perform certain tasks. She has since suffered a series of additional medical setbacks that have also kept her from gainful employment, and, because Defendants offer no assistance to her or for her conditions, she is relegated to sheltering out of sight with a small community of other homeless people she can trust.

65.  On or about August 4, 2023, without prior notice, Defendants "swept" Ms. McCOY's shelter site, and didn't offer her (or any other citizens at the location) any shelter options or services, other than "*10 minutes to grab your stuff and go!*" Due to her disabilities, Ms. McCOY was unable to "grab" everything. Defendants took her deceased son's skateboard, a bicycle, and her only family photographs. They also took jewelry and her valuable medications which included diabetes medicine (insulin), blood pressure medicine, and the antibiotics she was prescribed. They also took from her some small portable solar panels upon which she relied to charge her own and others' cellphones. Defendants provided no information on how, when or where she could recover the items they took. They just threw it away as "trash."

66. On November 27, 2024, the day before Thanksgiving, workers who identified themselves as San Diego COUNTY MTS employees arrived at 7:00 a.m., without prior notice, and began cutting into Ms. McCOY's tent with a knife. They then cut her tent door open and told her she had 4 hours to leave the area. Ms. McCOY was very ill on this day and told the Defendants that she was sick and disabled and needed to go to the hospital. They ignored her pleas and information and proceeded to throw her possessions away, along with the now-destroyed tent, again without providing any information for Ms. McCOY to recover such.

67.  Plaintiff **BRITTANY STEBBINS** is a resident of the County of San Diego and at all relevant times herein was and now is homeless as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C § 11301 et seq., inasmuch as she lacks a fixed, regular and adequate nighttime residence.

68.  Ms. STEBBINS is the mother of two children and was a full-time server at Outback Restaurant for nine years.  She was also the caretaker for her ill mother who was suffering from lupus. When she was no longer able to work full-time and care for her children and ailing mother at the same time, Ms. STEBBINS lost her job and found herself and her children unhoused and living on the streets in Lakeside. Ms.

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

STEBBINS faced a dilemma encountered by many single moms -- she couldn't leave her kids home alone while she worked, but was unable to afford childcare for them in order to work. Then her children were taken from her into foster care because she wasn't able to financially support them. Ironically, nothing similar to "foster care" was offered to Ms. STEBBINS, despite Defendants' claims that their actions were designed to protect "*our citizens' health and safety.*"

69. On multiple occasions, Ms. STEBBINS' possessions have been taken and tossed away by Defendants and their agents during relentless and repeated "sweeps" near the San Diego River Bottom in Lakeside and other locations. These sweeps occurred without any sufficient advance notice by Defendants, or any information about when, how, or where to recover the items taken.

70. On May 17, 2023, Defendants took her survival gear and what was left of her personal belongings during a sweep at the San Diego River Bottom in Lakeside. Defendants actively prevented her from collecting anything, then confiscated and destroyed her personal property, which included her vaccination records for her and her dog, clothes, blankets, tent, her backpack, and other survival gear, along with jewelry and photographs of her children. The only "help" Defendants offered Ms. STEBBINS was a recommendation that she "*Move or be arrested*!"

71. Plaintiff **AUSTIN WHALEY** is resident of the County of San Diego and at all relevant times herein was and now is homeless as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C § 11301 et seq., inasmuch as he lacks a fixed, regular, and adequate nighttime residence.

72. Mr. WHALEY graduated from Granite Hills High School with honors. He then graduated from California Institute of Automotive Technology and worked as a Master Mechanic for over 10 years. He is also a certified smog technician.

73. In recent years, Mr. WHALEY fell on hard times because he could not afford the rising rents in San Diego's East County and began living out of his prized, classic 1972 Chevy Nova. Mr. Whaley had started and for a time operated a successful

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

mobile car mechanic business out of that vehicle, until San Diego COUNTY Sheriff's deputies illegally impounded the car and then stole and kept it for their personal use and benefit.

74.  Mr. WHALEY is disabled and has been forced to live on the streets in Santee and Lakeside, and has had all of his personal effects taken from him during repeated sweeps by Defendants of his homeless encampments, the most recent of which occurred in July 2023. Defendants have taken all of Mr. Whaley's survival gear and his irreplaceable belongings including a valuable coin collection, jewelry, and family photographs. They have never provided information about when, how, or where the items could be recovered. Out of everything Mr. WHALEY has lost, he explains, "The worst thing is I haven't spoken with my parents who live in Alpine for years because of the shame I feel about being homeless."

75.  Plaintiff **DAVID WILLIAMS** is a resident of the County of San Diego and at all relevant times herein was and now is homeless as the term is defined in the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C § 11301 et seq., inasmuch as he lacks a fixed, regular and adequate nighttime residence.

76.  Mr. WILLIAMS has worked in construction and gardening but has been institutionalized most of his life.  He is described as a "gentle giant," and tries to stay out of the way of the authorities because they have repeatedly taken all of his belongings. "*But just when I'm recovering and replenishing my survival gear from the last sweep, I am subjected to another raid. I have to start all over again.*"

77.  Twice in June of 2022, CALTRANS conducted "trash sweeps" at the places in Santee where Mr. WILLIAMS was sleeping. After they arrived, Defendants actively prevented him from gathering his personal belongings, despite his requests and attempts to do so, and forced him to watch as they tossed everything he, and others, owned into a trash truck. They made no attempt to separate actual trash from personal properties.

78. Defendants did take the time to post a "Notice" at that site. That "Notice" read:

> *"To reclaim personal property call _____.*
> *Failure to reclaim property by 9-1-2022 will result in its disposal."*

## B. Defendants.

79. Defendant **COUNTY OF SAN DIEGO ("COUNTY")** is a public entity existing under the laws of the State of California and is the operator and employer of the **SAN DIEGO SHERIFF'S DEPARTMENT ("SDSD")** and its Deputies, and is liable for all the actions of SDSD and its other agencies and entities and personnel referenced herein. The County's Code Compliance Team is responsible for enforcement of codes and ordinances in the unincorporated areas of the County, which include the areas known as the CITY OF LAKESIDE.

80. Defendant **CITY OF LAKESIDE ("LAKESIDE")** is an unincorporated community in Eastern San Diego County. According to its Chamber of Commerce website, LAKESIDE is a "census-designated place" founded in 1886 and governed by the COUNTY. LAKESIDE's law enforcement agency is the SDSD LAKESIDE DIVISION and its Deputies, who are sometimes joined by CALTRANS and other local law enforcement departments during "sweeps" of homeless people.

81. Defendant **CITY OF SANTEE ("SANTEE")** is a duly organized city located in Eastern San Diego County. SANTEE's law enforcement needs are served by SDSD and its deputies, who are also sometimes accompanied by SDSD Homeless Assistance Response Team ("HART") to execute their "sweeps" of homeless living spaces within its jurisdiction. SANTEE also contracts with and controls and directs the activities of private homeless services agencies such as Alpha Project and PATH ("People Assisting the Homeless") to assist with, and engage in, its "sweeps" activities, and property destruction and "trash" collection efforts.

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

82.  Defendant **CITY OF SAN DIEGO** is a municipal corporation organized, acting, and existing under the laws of California which, through its agents, including the San Diego Police Department ("SDPD"), arrests, cites, detains, and otherwise sweeps, chases away and punishes homeless people pursuant to its Municipal Code and other laws. In addition to its actions within its City limits, it also owns, operates, and controls actions within several parcels of real estate outside its City limits which are located in East San Diego County areas in and around SANTEE and LAKESIDE, including properties along Woodside Avenue, Lakeside Avenue, Timber Road, and Willow Road (https://sandiego.maps.arcgis.com/apps/webappviewer/index.html?id=7cace2f50ec7459e84acaa98345c2806. It is the City of San Diego's actions on and in connection with those parcels which are subjects of this action.

83.  Defendant **TONY TAVERAS** is the Director of the California Department of Transportation ("CALTRANS") and in that capacity is responsible for the proper enforcement, operation and execution of all duties and obligations vested by law in that agency. CALTRANS is and was at all times herein a public entity and an executive department of the State of California, created and existing under the laws of the State of California, operating in the County of San Diego. It is part of the cabinet-level California State Transportation Agency and manages the State's highway system and properties adjacent thereto. Defendant TAVERAS is sued only in his individual official capacity and only for violations of Federal law.

84.  Defendant **ANN FOX** is the CALTRANS District 11 Director, and as such has full responsibilities for all functions and activities within District 11, and is responsible for the proper administration and operation of all CALTRANS programs and obligations within District 11 boundaries, including the development and implementation of all polices and activities therein. District 11 includes all of San Diego and Imperial counties. Defendant FOX is sued only in her individual official capacity. Together Defendants TAVERAS and FOX and their agents, employees and contractors may be referred to herein as the "CALTRANS DEFENDANTS."

85. Defendants regularly work together to summon, utilize, direct, and orchestrate the assistance, support, and participation of CALTRANS, SDSD, SDPD, CHP, and other entities and agents, deputies, and personnel in taking the actions alleged herein.

86. At all times, the DEFENDANTS acted together and in concert with, and at the beck-and-call of, one or more of the other DEFENDANTS and their agents, employees, deputies, contractors, and personnel in committing the actions alleged herein.

87. Plaintiffs are informed and believe that the Defendants sued herein as DOE DEFENDANTS 1 - 48 are and were officers, employees, contractors, and/or other agents of the other Defendants, who aided, abetted, assisted, and/or otherwise helped plan, organize, orchestrate or carry out the actions alleged here. Plaintiffs are ignorant of the true names and capacities of the Defendants sued herein as DOES 1 - 48 and therefore sue those Defendants by fictitious names. Plaintiffs will seek leave of the Court to amend this complaint to allege their true names when ascertained. Plaintiffs are informed and believe that each of these actors is liable for and participated in the injuries and violations of the laws and rights alleged herein.

## FACTS

88. This case arises out of official and ongoing illegal policies and practices by Defendants of chasing homeless people from their jurisdictions by sweeping and raiding sleeping areas and confiscating and destroying the personal property of unhoused people who are Citizens of, and reside in, San Diego's East County without offering them any opportunity to retain, claim, or recover their property.

89. San Diego has earned an ominous position, having the fourth largest homeless population in the country.[9] The escalating homeless crisis in San Diego

---

[9] In 2023 San Diego County had the second largest number of people experiencing homelessness (PEH) in California and the fourth largest number of PEH in the United States (County of San Diego HHS Report, August 2024 - https://www.google.com/url?client=internal-element-cse&cx=015466730696295969998:wokiau6kw8k&q=https://www.sandiegocounty.gov/content/dam/sdc/hhsa/progr

County is directly linked to the lack of affordable housing. As of 2014, the median rental cost of a studio apartment in San Diego was 110% of the amount of an SSI check, which at the time was less than $900 a month.[10] In 2024, the maximum monthly SSI payment for an individual is $943 and $1,415 for a couple.

90.  In San Diego's East County, competition for lower-income housing is high. Renting an apartment or home depends not only on the cost, but how good your credit score is. Landlords receive numerous applications from interested renters and select only those tenants with good references, high credit scores, and higher incomes. This leaves those surviving on limited income without many options. It is not unusual for children to remain living at their parents' residence and for different generations of family members to live in the same household because they cannot afford places of their own.

91.  A recent study found that San Diego County needs 137,537 more affordable rental homes to meet regional demand – and that the majority of the region's low-income renters are spending *more than half their income* on housing. According to a report by the California Housing Partnership and San Diego Housing Federation, renters need to earn $47.67 an hour to afford monthly average rent of $2,479.[11] In addition, the demand for housing subsidies far exceeds supply. There exists a 10 to 12 year waiting list for Section 8 housing vouchers, with over 600,000 persons on that list alone. The very small amount of existing affordable or subsidized housing is also plagued by long waiting lists.[12]

---

ams/phs/CHS/Persons%2520Experiencing%2520Homelessness%2520in%2520SDC_8.12.24.pdf&sa=U&ved=2ah UKEwiphaSUq9qKAxXbHkQIHa5tFk8QFnoECAsQAQ&usg=AOvVaw0OwCpiVcxIyKwmW82kaTjX&fexp=72 801196,72801194,72801195).

[10]  Emily Cooper et al., "Priced Out in 2014: The Housing Crisis for People with Disabilities," Technical   Assistance   Collaborative   (June   2015)   (https://www.advancingstates.org/ hcbs/article/priced-out-2014).

[11]  "Morning Report: The County's Big Affordable Housing Gap." Voice of San Diego (May 10, 2024) (https://voiceofsandiego.org/2024/05/10/san-diego-countys-big-affordable-housing-gap/).
[12]  Russell, Stephen. "The Affordable Housing Crisis in San Diego: How Do We Meet the Need?" San Diego Housing Federation (January 25, 2017).

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

92.  San Diego County's latest homelessness census shows the homelessness crisis has hit a new record in 2024, and "*East County has the second highest number of people experiencing homelessness outside of the City of San Diego…. We have very few emergency shelter beds.*"[13]

93. These statistics make it abundantly clear that there exists a <u>direct</u> correlation between the rise in housing costs and the number of homeless people. Despite the obvious need for more, and more affordable, housing, Defendants' actions demonstrate their dehumanizing animus towards the unhoused Citizens in their communities. Instead of taking measures, mandated by law, to remedy the deficiencies and address root causes of homelessness, such as creating safe places for homeless people to sleep, connect with services, and store their possessions, Defendants concentrate their efforts solely on chasing homeless people out of sight.

94.  Defendants' actions fail to comply with, and are intentionally and directly contrary to and subversive of, their duties and obligations required by Welfare & Institutions Code §17000 and §10000 to "*relieve and support all incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident*" residing in the County and to "*provide for protection, care, and assistance to the people of the state in need thereof, and to promote the welfare and happiness of all of the people of the state by providing appropriate services to all of its needy and distressed.*"

95. Defendants do so by engaging in a campaign of terror against the unhoused residents within their communities as part of their ongoing efforts to rid themselves of homelessness in a series of well-planned, ruthlessly executed raids and "sweeps" designed to harass and threaten homeless people in order to get them to "move along." Defendants' message is clear: "*Go somewhere else!*"

---

[13]  Halverstadt, Lisa. "Homelessness Spikes Again in San Diego County," Voice of San Diego, (May 22, 2024) https://voiceofsandiego.org/2024/05/22/homelessness-spikes-again-in-san-diego-county/; *and see* Ramirez, Jasmine. "Residents concerned over 150 sleeping cabins coming to Spring Valley to help homeless." CBS 8 (May 8, 2024). San Diego County approves 150 cabins for unhoused people | cbs8.com

DREHER LAW FIRM

350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

96.  In order to achieve their goal of forcing homeless people to "*Go somewhere else,*" Defendants confiscate Plaintiffs' critical survival gear and personal belongings without offering any opportunity for Plaintiffs to retain or reclaim it. These property items are "taken" or destroyed without warrant, reasonable cause, or exigent circumstance. Further, despite their contrary legal obligations and representations, Defendants fail to safeguard any of Plaintiffs' property for later retrieval, in direct conflict with Defendants' own written policies and knowledge, as well as, State and Federal laws and well-established court rulings, that such actions are illegal (see, i.e., *Lavan v. City of Los Angeles*, 693 F.3 1022 (2012)).[14]

97.  Defendants' stated justifications for their actions – "health & safety," "wildfire risk," "environmental issues" – are a ruse designed to justify a false notion of legitimacy. The purpose and intent of these "sweeps" by Defendants is to harass, intimidate, threaten, and ultimately "chase-away" unhoused people from San Diego's East County jurisdictions, despite the fact that they have nowhere to go.

98.  Defendants "chase away" homeless people by depriving them of places to be and items that are critical to their survival and ability to live, such as clothing, tents, blankets, food, work tools, and prescription medications, leaving Plaintiffs even more destitute and vulnerable. Defendants also destroy Plaintiffs' irreplaceable and intimate personal items such as family photographs, jewelry, and even the ashes of deceased relatives, while actively preventing Plaintiffs and Class Members from gathering these important belongings before leaving. Defendants' actions have the intended effect of <u>increasing</u> the danger to Defendants' "health and safety," thus giving the lie to Defendants' purported justifications for such actions, and undermining their legal obligations to assist the poorest of the poor.

---

[14]  See also, *i.e.*: Cal. Civ. Code §2080 et seq; *Pottinger v. City of Miami*, 801 F. Supp. 1551 (SD FL 1992); *US v. Gooch*, 6 F.3d 673,677 (9th Cir. 1993); *Kincaid v. City of Fresno*, 2006 WL 3542732 (ED Cal. 12/8/2006); and City of San Diego Settlement/Order, *Isaiah Project v. City of San Diego*, USDC, S.D. Cal #08cv2699 BTM (WVG); Defendants' Notices to Vacate indicating Individual Plaintiffs may pick up their personal property within 90 days.

99.     In addition, Plaintiffs have observed that some of their more valuable property is actually stolen and kept for personal profit and gain by Defendants' workers, contractors, and personnel who place such property inside their personal trucks or patrol vehicles. Plaintiffs' counsel has made Defendants aware of this, yet no investigation or cessation of these theft activities has occurred.

100.     Defendants sometimes place signs near the sites of their sweeps claiming to provide "72 Hour Notice of Cleanup and Property Removal." These notices state that "*Personal property that is sanitary and saleable or useable or otherwise reasonably appears to be of value will be stored for 90 days…[and] can be claimed by calling _____, Monday through Friday from 7:00 a.m. to 2:00 p.m.*" But these signs are just for "show" -- often they contain no telephone number, but instead contain only blank lines. On the rare occasions when phone numbers are listed, they aren't answered by Defendants anyway. [15]

101.     These posted signs are used by Defendants only to proffer the illusion that Notice is being given and rules are being followed. The "Notice" times stated on the signs are not adhered to; Defendants fail to keep or store any of Plaintiffs' or Class Members' property or make it available for retrieval or claiming.

102.     Defendants' raids and "sweeps" begin when they arrive with large trash compactor trucks, into which they immediately begin tossing Plaintiffs' personal property. Defendants then threaten Plaintiffs with citation and/or arrest if they do not immediately "*move along*." Plaintiffs are given no opportunity to gather their belongings, despite requesting such. Plaintiffs are forced to watch as everything they own is trashed, while Defendants hurl insults, profanities, and slurs.

---

[15]   On May 31, 2023, Plaintiffs' counsel called the phone number listed on Defendants' "Notice." An agent of Defendants answered the call and informed counsel that they "*do not handle such matters in their jurisdiction*," and told counsel to "*contact Kelly Gower at 858-492-5012.*" Counsel called and left a voicemail message as instructed. A week later, on June 7, 2023, Counsel, having received no callback, called the number again and left another message referencing the posted "Notice." On June 12, 2023, Counsel received a voicemail saying: "*Do not call back again.*"

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

103.    Counsel first attempted to intercede on behalf of Plaintiffs in June 2022, in an attempt to convince Defendants to cease these illegal activities and avoid this litigation. However, Defendants rejected these attempts, and instead continued to ruthlessly execute these "sweeps" and destroy Plaintiffs' personal property in knowing disregard of laws protecting Plaintiffs' property from such actions.

104.    For example, on June 1, 2022, CALTRANS posted a Notice to Vacate near the Highway 67 Bridge in Lakeside, stating that Plaintiff Class Members had until Monday, June 6th to vacate and remove their belongings. However, on Thursday, June 2nd, CALTRANS arrived early and forced all the unhoused people to "*move along*" or "*be arrested*." Although the Notice indicated that those impacted could retrieve their personal property until September 1, 2022, in reality, nothing was kept as CALTRANS, aided by CHP officers, tossed everything into a trash crusher truck and destroyed it. There was nothing left to "claim" or retrieve.

105.    CALTRANS justified this "sweep operation" under the guise of "*wildfire risk*," claiming their actions were necessary due to "imminent risk of wildfires" caused by the conditions there. Yet, after CALTRANS' cleanup crews took and destroyed all of the unhoused individuals' personal belongings, they cut down all the shrubbery in the area and left it there in piles, where it dried out for weeks and became the highly combustible and dangerous "*imminent wildfire risk*" they were purporting to eliminate.

106.    CALTRANS has entered into at least two class action settlements in which it has <u>agreed</u> that its actions sweeping and immediately destroying people's property were illegal, and further agreed to comply with statewide injunctions preventing such actions in the future.[16] Yet CALTRANS continues such actions.

---

[16]    *Kincaid v. City of Fresno, 06-CV-1445 OWW (Eastern Dist. of Cal., Fresno Div)*; Judge Oliver W. Wanger stated during oral argument that "*the practice of announce, strike, seize [and] destroy immediately is against the law.*" (*https://www.aclunc.org/our-work/legal-docket/kincaid-v-city-fresno*). Similarly, CALTRANS has failed to comply with its similar July 14, 2020 settlement obligations preventing such conduct in <u>Sanchez v. Caltrans</u>, Alameda Sup. Court #R616842117 (*https://www.aclunc.org/our-work/legal-docket/sanchez-v-california-department-transportation*)

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

107.    Since Plaintiff's counsel first began monitoring Defendants' sweeps and property destruction, there have been numerous encounters between Class Members and Defendants. Only once were Class Members purportedly permitted to attempt to "retrieve" their personal property. This took place after an "agreement" was reached in which SANTEE's City Attorney agreed that Defendants would store and make available for retrieval by Plaintiffs the property items that Defendants had taken in a scheduled sweep at the San Diego River Bottom in late August 2023.

108.    However, when Plaintiffs arrived at SANTEE's designated "pickup" location on September 5, 2023, they found that SANTEE's offer was bogus. All of their property taken by Defendants had been damaged, destroyed, and dumped into a large "trash dump pile" rather than stored and retained in the conditions in which it had been taken. Clothing and smaller items were commingled and stuffed randomly inside trash bags; bicycles had been twisted, bent and crushed, as if they had been run through trash-compactor-trucks. Plaintiffs' valuable property was not there. Somewhere beneath those piles also lay the mangled, discarded, and disregarded laws, rules, and promises which should have prevented such activities by Defendants.

109.    Defendants ramped-up their "Cleaning" activities designed to continue pushing unhoused residents "*anywhere else*" and out of sight. In an effort to avoid such encounters, Plaintiffs and Class Members have been forced to relocate to remote bridges under Highway 67 and public property along the San Diego River Bottom where they have a chance to be "unseen." These areas are unsuitable for habitation, exposing the unhoused to dangerous and inclement conditions such as flash flooding and mosquito infestations.

110.    San Diego's East County has no homeless shelters or hotel voucher programs. None of the Defendants offer any services, help, shelter, or storage locations. Defendants in effect make it their express policy to exhibit extreme

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

hostility towards homeless people, such as directing homeless people to leave and go to another city, while deliberately avoiding the creation of any shelters or assistance programs, in order to discourage homeless citizens from "being" there. Defendants target their removal and property destruction activities against homeless citizens when temperatures dip into the low 30's or when the unhoused are recovering from devastation caused by flooding that results from storms, and during times when temperatures rise above 100 degrees. Defendants have also installed jagged-edged rocks beneath bridges to prevent people from sheltering there.

111.    More recently, on Tuesday, April 12, 2024, Defendant CITY OF SAN DIEGO posted "24-Hour Notice of Cleanup and Removal" on one of the East County properties it owns, purporting to provide 24 hours for the unhoused people living near the Lakeside Open Space to "move." The Notices were stapled, not taped, directly to Plaintiffs' tents, tearing holes in their only shelters from the elements.

112.    Plaintiffs' counsel made several calls that day, starting with the phone number posted on the Notice which indicates that the City of San Diego would store Plaintiffs belongings for later retrieval. The next day the City's Environmental Services Department, accompanied by four SDPD officers, arrived early and began trashing Class Members' property without sorting, evaluation or review. They saved nothing for later retrieval, despite the contrary language on their "sweep" notices, and made no effort to determine what was, or was not, actual "trash."

113.    Cleanup crews engaged as agents of the CITY OF SAN DIEGO, including Urban Corps of San Diego County and Alpha Project employees, were also involved to assist in throwing items away. One of the SDPD officers present, Officer Brent (badge number 5572), expressed two false tropes that Defendants performing these "sweeps" often use to label homeless people in order to justify such actions – that homeless people are "*criminals and drug addicts*" and that they are "*choosing not to work*." Such statements and opinions are not supported by the evidence. In fact, "Nationally, unhoused people with such problems are in the

DREHER LAW FIRM

350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

minority: 21 percent struggle with a serious mental health illness; 16 percent with substance abuse."[17]

114.    Defendants had arrived with two large trash-crusher trucks, but no transport vehicles to collect or store any of Plaintiffs' critical survival gear or important personal belongings. It was very clear that Defendants had no intent to follow the law requiring them to collect and safeguard Plaintiffs' belongings for later retrieval. Community advocates were able to limit Defendants' activities that day to trash cleanup only, but Kelly Gower of the CITY OF SAN DIEGO Environmental Services Department ("SDESD") made it abundantly clear that they planned to return the following morning to take everything else, saying: "*We can take all of this ... most of this stuff is stolen or discounted or whatever.*" – another false trope used by Defendants as bogus justification for their knowingly-illegal acts.

115.    Soon Ms. Gower (who had previously failed to return solicited phone calls – *see Footnote 15 above*) and the SDPD officers present were socializing and laughing while the unhoused people were packing up their important belongings in a frantic effort to avoid their destruction. It was business as usual for Defendants, who made no offers of shelter or services while violating the law, their own rules, and prior Court Orders and Settlement Agreements (see, i.e., *Isaiah Project v. City of San Diego*, supra, *Footnote 14 above*) prohibiting such actions.

116.    Defendants had and have no intention of collecting Plaintiffs' personal property and safeguarding it and making it available for retrieval by Plaintiffs during their ongoing "sweeps." Once Plaintiffs' property is "seized" there is no procedure available for them to retrieve their property. Defendants destroy Plaintiffs' property regardless of the fact that it has value to its owners, solely for the purpose of chasing these people "away."

---

[17]  See, Rosenthal, Tracy. *The New Republic*, Unusual Cruelty: The New Sundown Towns (April 30. 2024) (https://newrepublic.com/article/181036/new-sundown-towns-grants-pass-v-johnson)

117.     Defendants' actions criminalizing homelessness "restrict one's ability to engage in necessary life-sustaining activities in public, *even when that person has no reasonable alternative*."[18]

118.     Defendants' refusal to provide sufficient affordable housing and shelter is a well-documented bureaucratic failure, which causes and exacerbates the homelessness crisis. East County's approximately 1,700 unhoused residents account for 20% of San Diego County's growing homeless population according to the Regional Task Force on Homelessness ("RTFH").[19]

119.     Supervisor Terra Lawson-Remer, who represents the County of San Diego on the Regional Taskforce for Homelessness Continuum of Care Advisory Board herself acknowledged that "[they] can do a better job of providing the right kind of help based on people's unique problems, or better yet, make sure they never lose their home in the first place."[20] According to former San Diego City Council President Sean Elo-Rivera: "*We must take every opportunity, explore every idea and do all we can to house the unsheltered and prevent more San Diegans from falling into homelessness. Housing is a human right....*"[21]

---

[18]     See Herring & Yarbrough (documenting consequences of criminalizing homeless people through move-along orders, citations, and threats, and how that drives people further into poverty) *Social Problems*, Volume 67, Issue 1, February 2020, Pages 131–149 (pub. 3/29/19) https://static1.squarespace.com/static/5b391e9cda02bc79baffebb9/t/5cc1c0569140b7fb43b1af44/1556201561950/Pervasive+Penality+social+problems+(1)+(1).pdf; Katrina Ballard & Samantha Batko, *Three Ways Communities Can Promote Inclusive Public Space and Better Support People Forced to Live Outside*, URBAN INST. (8/7/20), https://www.urban.org/urban-wire/three-ways-communities-can-promote-inclusive-public-space-and-better-support-people-forced-live-outside

[19]     *20% of Region's Homeless Now Live in East County, New Data Shows*, The San Diego Union Tribune, Blake Nelson (May 21, 2022) (https://www.sandiegouniontribune.com/communities/east-county/story/2022-05-21/20-of-regions-homeless-now-live-in-east-county-new-data-shows)

[20]     *2022 Point in Time Count Data Release*, S.D. Regional Task Force on Homelessness (5/23/22) (https://www.rtfhsd.org/updates/2022-point-in-time-count-data-released/).

[21]     *Id.* And *see,* Rebecca Louis, CEO, Wakefield Housing*: "Opinion: Affordable Housing is in a state of emergency. Let's Act Accordingly."* San Diego Union Tribune (June 3, 2024) (*https://www.sandiegouniontribune.com/opinion/commentary/story/2024-06-03/opinion-housing-shortage-an-emergency-lets-act-like-it*

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

120.      Unfortunately, they don't. Instead, Defendants simply hide the problems by chasing homeless people out of sight.[22]

121.      Since the Defendants have systematically neglected to invest in adequate shelter and successful service programs for its unhoused residents, those experiencing homelessness are enduring "*lasting trauma that makes resolution more costly – and delayed resolution more inhumane*."[23] In the past two years alone, the number of persons experiencing homelessness in San Diego County has steadily risen. In March 2024, there were 1,226 unhoused persons in San Diego County's unincorporated areas, and 1,337 became newly unhoused. According to Jennifer Nations, Managing Director of the Homelessness Hub research lab at UC San Diego, "There's just not enough housing at a price point that people can afford."[24]

122.      Despite the mounting evidence that the lack of affordable housing is the driving force for the rise in homelessness, and that there are nowhere near enough shelter spaces to offer to those experiencing homelessness, the County and Cities continue to enact more laws that underline criminalize homelessness. In 2023, SANTEE enacted a slew of new ordinances that expressly seek to punish unhoused individuals for sleeping, lying down, camping, or storing their belongings on public property within its jurisdiction. SANTEE appears emboldened by its new measures and has increased its enforcement efforts against its unhoused Citizens in 2024.

---

[22]   Indeed, after enacting a new law aimed to rid Santee of its unhoused community by chasing them away and doing nothing else, Santee's mayor, John Minto, claimed that the new ordinance *"[D]oes not punish somebody for being homeless…But what it does is, it gives us the ability to protect our communities. **They can go anywhere else, they just can't stay there**."* See, Santee cracking down on homeless encampments along San Diego River | cbs8.com (1/17/2023).

[23]   Covert, Adrian and Funk, Elizabeth. *Opinion: On Homelessness, Focus on Bringing People Indoors and Saving Lives.* San Diego Union Tribune (April 17, 2024) (https://www.sandiegouniontribune.com/opinion/commentary/story/2024-04-17/homelessness-focus-on-bringing-people-indoors-and-saving-lives).

[24]   Nelson, Blake. "*Homelessness in San Diego County Has Now Risen Every Month for 2 Straight Years.*" San Diego Union Tribune (April 17, 2024). (https://www.sandiegouniontribune.com/news/homelessness/story/2024-04-17/homelessness-in-san-diego-county-has-now-risen-every-month-for-2-straight-years)

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

123.     Instead of creating housing, shelter, and other aid and/or efforts to alleviate homelessness, Defendants have increased their creation and enforcement of the following Municipal Codes, Local Ordinances, and State Penal Code sections against the unhoused in their communities:

<u>Local Ordinances and Municipal Codes</u>

a. San Diego County Code §67.804 Discharge Prohibitions (criminalizing the use of any materials or wastes on public or private lands in a manner and place where they may result in a discharge to water).

b. San Diego County Code §68.503 Unlawful Deposit of Discarded Materials in Public or Private Places (criminalizing the deposit of waste on streets, highway, parks, or campgrounds, or any public or private property as a nuisance);

c. San Diego County Code §73.111 Obstruction of Public Ways (criminalizing a person for standing or sitting in public areas dedicated for public use in any manner that obstructs its free use);

d. San Diego County Code §73.108 Public Parks (criminalizing camping in any public park, street, or unimproved property owned or leased by the County). Camping is defined as the use of any public park, any public street or highway or improved or unimproved property owned or leased by the County, for temporary living accommodations such as, but not limited to, sleeping, sleeping activities, or making preparations to sleep, including the laying down of bedding for the purposes of sleeping, or storing personal belongings, or making any fire, or using any tents, or other temporary structures);

e. San Diego Municipal Code §54.0105 (unlawful for any person to place, or allow to remain, any goods, wares, baggage, personal property or merchandise on any sidewalk or curb, between the outer edge of the sidewalk or curb and the property line.)

f. San Diego Municipal Code §54.0209 (illegal dumping);

g. San Diego Municipal Code §54.0210 (littering prohibited);

h. San Diego Municipal Code §54.0212 (property impound);

i. San Diego Municipal Code §63.0404 (camping prohibited);

j. San Diego Municipal Code §63.0406 (removal of personal property, camping paraphernalia, and all other property, contraband, litter, and waste found at an encampment or at a location where a person is engaged in unlawful camping);

DREHER LAW FIRM

350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

k.  Santee Ordinance No. 610 (Adding Section 7.20.100 to the Santee Municipal Code to Protect the San Diego River Corridor, Mitigate Wildfire and Flooding Risk, Improve Water Quality, and Prevent the Destruction of Critical Habitat);

l.  Santee Municipal Code §7.20.070 (Disposing Trash on Public Property);

m. Santee Municipal Code §8.08.300 (Disposing of Trash in or Adjacent to Any Watercourse);

n.  Santee Municipal Code §7.20.130(A) (Causing/Intending to Cause Fire);

o.  Santee Municipal Code §7.20.130(B) (Using or Possessing Competent Ignition Source);

p.  Santee Municipal Code §7.20.130(C) (Obstruction of the Flow of Water);

q.  Santee Municipal Code §7.20.130(D) (Discharge of Pollutant/Waste);

r.  Santee Municipal Code §7.20.130(E) (Threatened Damage to Endangered Species or Critical Habitat);

s.  Santee Municipal Code §7.20.150 (Interference with Abatement);

t.  Santee Municipal Code §7.20.160 (Violation – Penalty);

State Statutes

a.  Cal. Penal Code §602 (criminalizing trespassing);

b.  Cal. Penal Code §374.4(a) Unlawful to Litter;

c.  Cal. Penal Code §647(e) (criminalizing "lodg[ing] in any building, structure, vehicle, or place whether public or private, without the permission of the owner or person entitled to the possession or in control of it");

d.  Cal. Penal Code §148(a) (prohibiting willfully resisting, delaying or obstructing agency or law enforcement personnel, from issuing citations when an "individual refused to vacate an encampment" after "notice";

e.  Cal Penal Code §372 ("unlawfully obstruct[ing] the free passage or use, in the customary manner, of any…public park, square, street, or highway"); and

f.  Cal. Penal Code §647(c) (criminalizing "willfully and maliciously obstruct[ing] the free movement of any person on any street, sidewalk, or other public place or on or in any place open to the public").

/ / /

124.    Unhoused individuals regularly identify that their primary obstacle to obtaining permanent housing is unaffordable rents. This is not a problem that can be solved by sweeps, criminalization, and punishment.[25] Criminal enforcement separates unhoused people from their property, drives them further into poverty, and creates barriers to employment, housing, and financial stability. Such actions cause further trauma, increased vulnerability to violence, and makes homeless people more likely to remain homeless—ultimately making our communities less safe.

125.    Due to the lack of accessible shelters or storage places existing or being offered, Defendants' policies and practices are fundamentally unfair, and, as such, Plaintiffs have been subject to, and are at ongoing risk of being subject to, Defendants' continued unconstitutional criminalization and property destruction.

126.    Defendants' miniscule efforts to house their homeless Citizens are not keeping pace with the number of people losing their homes in San Diego County. According to San Diego Regional Task Force on Homelessness ("RTFH") data, 14,258 individuals sought homeless services *for the first time* from October 2022 through September 2023 and only 8,832 formerly unhoused individuals *exited* homelessness. As RTFH's CEO Tamera Kohler explained: "*Housing and homelessness are directly tied together, and when rental costs go up, so do the numbers of people experiencing homelessness.… Increased housing opportunities are needed to turn the dial on the regional [homelessness] crisis.*" [26]

---

[25] "…[R]esearch shows that criminalization perpetuates rather than discourages homelessness, disqualifying unhoused people from the support they need, including federal housing benefits. A criminal record and credit scores wrecked by civil debt mean fewer employers or landlords willing to give them a chance. In the short term, arrests and sweeps interrupt the efforts of service providers. Unhoused people lose medication, critical documents, survival gear, and fragile support networks, losses that compound the physical and emotional toll of living outdoors."[25] Rosenthal, Tracy. *Unusual Cruelty: The New Sundown Towns*, The New Republic, pg. 13 (April 30, 2024) (https://newrepublic.com/article/181036/new-sundown-towns-grants-pass-v-johnson).

[26] Voice of San Diego, *San Diego's Housing Efforts Aren't Keeping Pace with Newly Homeless*. Lisa Halverstadt (December 1, 2023); https://voiceofsandiego.org/2023/12/01/san-diegos-housing-efforts-arent-keeping-pace-with-newly-homeless/

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

127.      Defendants' tactics in East County are designed and intended to frighten and intimidate homeless people into going "somewhere else," while ignoring the fact that the problem of homelessness is worsening. In this manner, Defendants willfully avoid their obligations to work to remedy the problem.[27]

128.      Moreover, people from *all* demographics are falling into homelessness for the first time due to San Diego's high cost of living – not because of mental illness or substance abuse. Many became homeless for the first time during and shortly after the Covid pandemic due to an unexpected health crisis, loss of employment or after the moratorium on evictions was lifted. Named Plaintiffs and Class Members include veterans who have served this country and survivors of sexual assault who are struggling to put their lives back together.

129.      The resulting cost for the County's failure to address the homeless crisis is high. In January 2024, RTFH reported that 1,385 San Diegans became homeless for the *first* time while only 966 *exited* homelessness. Again, this data confirms what the Defendants already know – that local "efforts," such as they are, to combat homelessness aren't keeping up with the number of people losing their homes.[28]

130.      Instead of combatting the causes of homelessness, Defendants resort to cruel, ruthless, and hostile actions designed to force homeless people to leave their communities. Yet, as Defendants are well aware, "leaving" is an impossibility because sleeping outdoors is unavoidable when there's nowhere else to "go."

131.      In a recent article published by the San Diego Union Tribune, the author opined that "Homelessness is complex and multifaceted, requiring complex and multifaceted responses. Evaluation done in partnership between government,

---

[27]   See Rosenthal, Tracy; *Unusual Cruelty: The New Sundown Towns*, Fn. 18, *supra*.

[28]   Regional Task Force on Homelessness San Diego, HMIS Date Newsletter, January 2024; https://www.rtfhsd.org/wp-content/uploads/HMIS-Data-Newsletter-January-2024.pdf; & see Lisa Halverstadt, "Homelessness Spikes Again in San Diego County," Voice of San Diego, (May 22, 2024) https://voiceofsandiego.org/2024/05/22/homelessness-spikes-again-in-san-diego-county/.

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

universities, program providers and funders, and people with lived experience of homelessness, [are] vital to identifying those programs and services that can move us toward a future where homelessness is a rare and brief occurrence. Only together can we finally create lasting change."[29]

132.    This tracks with the experiences of Plaintiffs, whose voices are drowned out by the politicians who find it easier to use them as talking points in their campaigns for re-election. It's easier to blame the unhoused for society's problems than it is to work on the *actual* problems and offer *real* long-lasting solutions. Those experiencing homelessness become the scapegoats, and politicians always seek someone to blame.[30]

133.    Unfortunately, Defendants have been unwilling to engage in any meaningful conversation about more successful strategies to reduce homelessness in our communities with the most important stakeholders – those with lived experience. Plaintiffs' counsel invited CALTRANS to join Plaintiff Class Members with "lived-experience" to address homelessness in its jurisdiction, but CALTRANS refused.

134.    In every instance in which Plaintiffs filed an official complaint regarding Defendants' property destruction and "theft" of Plaintiffs' personal property by Defendants themselves, Defendants dismissed these complaints without any bona fide investigation. For example, in response to Plaintiffs' written complaint regarding the "sweep" and property destruction that occurred on May 15, 2023 (**County File Number: 230430**), the County Counsel responded as follows:

> *"Your claim has been reviewed within the terms and restrictions of those laws. We regret that investigation has obliged us to conclude that the claim must be rejected. Therefore, the claim is hereby rejected this date."*

---

[29]    Nations, Jennifer, "Opinion: Evaluation of Homelessness Programs Can Do Much More Than Save Money." San Diego Union Tribune (**April 29, 2024**) (https://www.sandiegouniontribune.com/opinion/commentary/story/2024-04-29/opinion-evaluation-of-homelessness-programs-can-do-much-more-than-save-money).

[30]    Rosenthal, Tracy. *Unusual Cruelty: The New Sundown Towns*, pgs. 5-6, Fn. 18, *supra*.

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

135.     It is a missed opportunity when our government fails to do anything constructive to solve public problems, especially when laws and statutes specifically require them to do so. In this case, Plaintiffs are instead marginalized and discriminated against due to their poverty – usually caused by circumstances outside of their control such as a serious health condition, loss of employment, increasing cost of living, or a tragic personal event that leaves them unable to keep up with the demands of life. Not everyone is fortunate to have a family support system when their world falls apart and they need a safe place to land. Not everyone has a college degree or career to fall back on. Not everyone recovers from a disabling and debilitating health condition or injury. Those experiencing homelessness did not *choose* to be homeless. They are our mothers and fathers, brothers and sisters, sons and daughters, neighbors and friends.

136.     Indeed, SANTEE mayor John Minto's words betray Defendants' thoughtless goals, policies, and actions, and describe Defendants' willful violations of law, with crystal clarity:

"*Homeless people can go anywhere else, they just can't stay there.*"

## REQUISITES FOR RELIEF

137.     Defendants' policies, actions, and conduct have resulted and will continue to result in irreparable injuries to Plaintiffs. Plaintiffs have no plain, adequate, or complete remedies at law to address the wrongs described herein. Defendants have made it plain by their actions and the ongoing nature of their activities that they intend to continue the unlawful conduct described herein.

138.     Defendants have adopted and enacted customs, policies, and/or practices of confiscating and destroying the personal property of Plaintiffs and Members of the Class without legal basis and the Defendants have participated and will continue to participate in implementing these policies and practices unless and until restrained by an injunctive decree of this Court.

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

139.    Defendants' actions violate Plaintiffs' established constitutional rights, and Defendants could not reasonably have thought that their conduct in intentionally seizing and immediately destroying all of Plaintiffs' personal property as alleged herein was lawful or consistent with Plaintiffs' constitutional rights.

140.    Actual controversies exist between Plaintiffs and Defendants because Defendants engaged in unlawful and unconstitutional conduct and intend to continue such, whereas Plaintiffs claim such conduct to be unlawful and unconstitutional.

141.    As a direct and proximate result of Defendants' unconstitutional and unlawful policies, practices, and conduct, Plaintiffs and Members of the Class have suffered, and will continue to suffer violations of their rights, and injury, loss, and damages, including but not limited to deprivation and destruction of property, including clothing, bedding, prescription medications, personal documents, and other personal possessions, leaving them without their essential personal belongings necessary for safety, shelter, health, well-being, and personal dignity.

142.    Defendants' actions are willful, wanton, malicious, and oppressive and done with conscious disregard and deliberate indifference for Plaintiffs' rights.

143.    On June 20, 2023, Plaintiffs submitted an administrative claim with the County of San Diego pursuant to California Government Code §§900 *et seq*., on behalf of themselves and all Class Members, addressing the issues raised herein, and asking the County to cease and desist such actions. The County rejected Plaintiffs' claim and request without any explanation on July 18, 2023.

144.    On August 15th and September 5th, 2023, Plaintiffs' counsel submitted administrative complaints with the City of Santee regarding the actions set forth herein, but these complaints were ignored by Defendants.

145.    On June 23, 2022 Plaintiffs' counsel submitted an administrative complaint with CALTRANS regarding the actions set forth herein, but that claim was "rejected."

146.    On November 6, 2023, Plaintiffs submitted another administrative claim with County Counsel via email pursuant to Govt. Code §§900 et seq., on behalf of themselves and all Class Members. Defendants failed to act on the claims within 45 days after they were presented (Govt. Code §912.4(a)). The COUNTY was presumed to have rejected these claims by failing to respond to them in the statutorily prescribed period of time (Govt. Code §912.4(c)). However, on January 18, 2024, Plaintiffs' counsel received a written response from Senior Deputy, Office of County Counsel, Michelle Acosta. In this letter, the COUNTY refuted Plaintiffs' complaint, insisting that they believed that the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, and their corollaries in the California Constitution, do not apply to the COUNTY'S actions, and that therefore the COUNTY is not obligated to follow any law in that regard. The COUNTY made no efforts to investigate Plaintiffs' claims, stories, or facts. Accordingly, Plaintiffs have exhausted administrative remedies (Govt. Code §912.4(a)) to the extent required.

### FIRST CLAIM FOR RELIEF
**Unreasonable Search and Seizure**
**Under Fourth Amendment to the U.S. Constitution**
***Pursuant to 42 U.S.C. §1983***
**(All Plaintiffs Against All Defendants)**

147.    Plaintiffs re-allege and incorporate by reference all the above allegations as though fully set forth herein.

148.    The Fourteenth Amendment protects against all unreasonable searches and seizures and specifically protects individuals from being arrested or having their property searched and seized by law enforcement without probable cause that a crime has been committed. U.S. Const. Amend. IV.; *Kincaid v. City of Fresno*, 2006 WL 3542732, at *35-37 (E.D. Cal. Dec. 8, 2006) "[S]eizure of homeless people's personal property without probable cause […] violates the Fourth Amendment to the United States Constitution."

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

149.    The Fourth Amendment prohibits property destruction under these same circumstances. Courts have held that local governments must refrain from summarily seizing and destroying the personal property of unhoused individuals. *See Lavan v. City of L.A.*, 797 F. Supp. 2d at 1012.  The Court in *Lavan* held that the Fourth Amendment protects homeless from government seizure and summary destruction of their unabandoned property, including temporarily unattended personal property. *aff'd, Lavan*, 693 F. 3d 1022, and 1030.

150.    Other Courts have expanded this protection explaining that "even if the seizure of the property would have been deemed reasonable had the City held it for return to its owner instead of immediately destroying it, the City's destruction of the property rendered the seizure unreasonable." *Garcia v. City of L.A.*, 11 F. 4th 1113, 1124 (9th Cir. 2021) ("our prior caselaw states clearly that the government may not summarily destroy the unabandoned personal property of homeless individuals that is kept in public areas").

151.    Defendants' above-described customs, policies, practices, and conduct of confiscating and destroying Plaintiffs' personal property without warrant, probable cause, exigent circumstances, or adequate notice violate Plaintiffs' right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983.

152.    Individual Plaintiffs and others living in San Diego's East County, including many unhoused people served by Plaintiff HOPE, are being and will continue to be subject to raids, sweeps, searches, seizures, arrests, "move along" orders, and being "chased away" without probable cause or reasonable suspicion. And they live under constant and imminent threat of being subject to these unconstitutional searches and seizures, as well as property destruction – which permanently deprives them of their belongings.

153.     Defendants have intentional, active, and official policies, customs, and practices of seizing and destroying unhoused people's personal belongings without making any objective assessment or determination about whether it poses any kind of threat, solely for the purposes of chasing people "away." In addition, Defendants have intentional, active, and official policies of undermining and endangering homeless people's health and safety, and deliberately and intentionally ignoring and failing to follow their statutory obligations to protect and care for their Citizens.

154.     Defendants have created, and utilize, policies, customs, and practices of indiscriminately taking all personal property from unhoused individuals and disposing of it without sorting it or saving any of it for later retrieval, while ignoring the timely and contemporaneous objections of unhoused people crying out to have their belongings preserved. Defendants make no effort to retain or preserve any of the property that they confiscate from Plaintiffs, even though it is obvious that most of the property is valuable to the Plaintiffs and in many cases, represents virtually everything they own. This widespread destruction belies any suggestion that Defendants' practice is to remove only clearly abandoned or hazardous property. *See, e.g., Mitchell*, 2016 WL 11519288 at *3-4 (C.D. Cal. Apr. 13, 2016); *Rios v. County of Sacramento*, 562 F. Supp. 2d 999, 1017 (E.D. Cal. 2021); *see also Pottinger v. City of Miami*, 810 F. Supp. 1551, 1559 (S.D. Fla. 1992).

155.     Defendants by their actions have acted in ways they *know* to be unconstitutional, by treating unhoused individuals as less than citizens. As a direct and proximate consequence of Defendants' unconstitutional acts, policies, and practices, the Named Plaintiffs and Class Members have suffered and will continue to suffer from the continuous, persistent, and imminent threat of having their personal property summarily seized and destroyed. Plaintiffs request injunctive relief to stop the property destruction by Defendants and to require that Defendants adopt constitutionally-sound policies.

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

156.    Defendants' actions are also intended to frustrate, undermine, and deplete Plaintiff HOPE's assistance and social service efforts and resources, which Defendants believe will more quickly force the departure and "moving along" of Named Plaintiffs and Class Members in San Diego's East County.

157.    By their acts and omissions, the Defendants deprived Plaintiffs of their clearly established rights to be free of unreasonable searches and seizures.

158.    The Defendants' violations of those rights also caused Plaintiffs to suffer physical, mental, emotional and economic damages. Accordingly, named Plaintiffs and Class Members seek appropriate damages, and injunctive and declaratory relief, and attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF
### Denial of Procedural Due Process and Equal Protection
### Under the Fourteenth Amendment to the U.S. Constitution
### *(42 U.S.C. §1983)*
### (All Plaintiffs Against All Defendants)

159.    Plaintiffs re-allege and incorporate by reference all the above allegations as though fully set forth herein.

160.    The Due Process Clause of the Fourth Amendment to the U.S. Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." The Fourteenth Amendment to the U.S. Constitution prohibits the government from depriving any person, including homeless persons, of their property without due process of law.

161.    The Fourteenth Amendment protects homeless individuals from having their property seized and destroyed by government agencies and law enforcement without significant due process safeguards - including advance notice, reasonable time to move property, and "bagging and tagging" of all confiscated non-hazardous property for later recovery at a suitable location. *Lavan v. City of Los Angeles*, 693 F. 3d 1022, 1028-29; 1032 (9th Cir. 2012) (14th Amendment requires governments to take "*reasonable steps to give notice that the property has been taken so the owner*

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

*can pursue available remedies for its return*"); see *O'Callaghan v. City of Portland*, No. 3:12-CV-00201-BR, 2013 WL 5819097, at *4 (D. Or. Oct. 29, 2013).[31]

162.    Defendants' policies, customs, and practices of seizing and immediately destroying unhoused people's personal belongings without any notice or an opportunity to be heard, and without any meaningful way to collect their property, are violations of the Fourteenth Amendment.

163.    Defendants' policies and practices of taking and trashing Plaintiffs' possessions without providing opportunity to reclaim and collect such taken property continue, subjecting Plaintiffs and the Class Members to persistent and imminent threats of having their personal property seized and destroyed without due process of law, for the sole purpose of "chasing them away."

164.    Moreover, Defendants' conduct violates the Equal Protection Clause because it disproportionately affects a suspect class and impinges on the exercise of Plaintiff and Class Members' exercise of a fundamental right. *Plyer v. Doe*, 457 U.S. 202, 216-17 (1982). Here, Defendants' "move along" and chase-away orders, ticketing, arresting and threats of such directly infringe on Plaintiffs' and Class Members' Rights to Travel. Defendants issue citations, engage in property destruction, and threaten arrest or criminal prosecution even though they know that Plaintiffs and Class Members have no reasonable alternative but to utilize the rudimentary shelter provided by their tents or vehicles. Defendants' conduct has the purpose and effect of depriving or threatening to deprive Plaintiffs and Class Members of the necessities of life, including sleep, food, shelter, medications, and other possessions, thereby preventing Plaintiffs and Class Members from traveling and residing in San Diego's East County.

---

[31]    City of San Diego is aware of its obligations under the 14th Amendment, inasmuch as it was previously sued for violating those obligations, and is required per Court Order & Settlement Agreement <u>not</u> to take and destroy homeless peoples' property but instead to make it available for recovery (*Isaiah Project v. City of San Diego*, USDC #2009CV2699 BTM/WVG).

165.    Defendants' unlawful actions and the resulting injuries entitle Plaintiffs and Class Members to compensatory damages, including damages for emotional distress. Named Plaintiffs and Class Members are also entitled to injunctive and declaratory relief, restitution, and attorneys' fees and costs.

166.    By their acts and omissions, the Defendants deprived Plaintiffs of their clearly established rights to procedural due process and equal protection.

167.    The Defendants' violations of those rights also caused Plaintiffs to suffer physical, mental, emotional and economic damages. Accordingly, named Plaintiffs and Class Members seek appropriate damages, and injunctive and declaratory relief, and attorneys' fees and costs.

**THIRD CLAIM FOR RELIEF**
**Exposure to a State-Created Danger**
**Fourteenth Amendment to the U.S. Constitution**
***Pursuant to 42 U.S.C. §1983***
**(All Plaintiffs Against All Defendants)**

168.    Plaintiffs re-allege and incorporate by reference all the above allegations as though fully set forth herein.

169.    Local and state governments violate the substantive due process rights of unhoused people when they place unhoused individuals in more vulnerable situations by confiscating critical survival belongings that they use for shelter, warmth, and protection from the elements. *See Santa Cruz Homeless Union v. Bernal*, 514 F. Supp. 3d 1136 at 1144-1145 (N.D. Cal. 2021); *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1102 (E.D. Cal. 2012).

170.    By their acts and omissions, Defendants deprived Plaintiffs of clearly established, substantive due process rights to be free from state created danger.

171.    Defendants' policies and practices have, and will continue to, put Plaintiffs, Class Members, and Disabled Subclass Members in immediate danger, and have caused physical, mental, emotional and economic damages.

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

172.    Accordingly, Plaintiffs and Class Members seek appropriate damages, and injunctive and declaratory relief, and attorneys' fees and costs

### FOURTH CLAIM FOR RELIEF
### Violation of Right to Association
### (First & Fourteenth Amendments and 42 U.S.C. §1983)

173.    Plaintiffs re-allege and incorporate by reference all the above allegations as though fully set forth herein.

174.    Defendants' actions, including their use and invocation of Local and Municipal Codes and Ordinances, and State Penal Codes, as justifications to throw away and destroy Plaintiffs' property and to chase them "away," constitute violations of Plaintiffs' and Class Members' constitutional rights to association in two related yet distinct contexts: the right to familial association and the right to expressive association and association with their communities.

175.    The Ninth Circuit has routinely found that the right to familial association is protected under both the First and Fourteenth Amendments of the US Constitution. *See Keates v. Koile*, 883 F.3d 1228, 1235-36 (9th Cir. 2018) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001)).

176.    Defendants by their actions are attempting to prevent, and effectively preventing, Plaintiffs and Class Members from "being present" in the public areas of San Diego's East County, where they and their friends and family reside, when no alternatives exist. Defendants' message is clear: "*Homeless people can go anywhere else; they just can't stay here.*"[32] Sadly, for those Plaintiffs and Class Members who are and have been residents of San Diego's East County who have fallen into homelessness, primarily due to the lack of affordable housing or unexpected life events, there are no alternative housing options.

---

[32]    Statement of Mayor John Minto, Santee Mayor; see FN 22, above.

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

177.    Moreover, Defendants' unconstitutional conduct restricts Plaintiffs and Class Members from engaging in routine activities such as grocery shopping and employment in violation of the 14th Amendment right to association. Recently, Disabled Subclass Members' requests for accommodations made via their counsel to Defendant SANTEE have resulted in hotel vouchers that relocate them to hotels in Hotel Circle. It is more than coincidental that counsel's requests for accommodations to Defendant SANTEE have resulted in hotel vouchers for spaces in Hotel Circle, far from SANTEE, which isolate Plaintiffs from their community, family, and right to expressive association protected under the First Amendment. This right enables citizens to assemble or gather for church, social meetings, educational workshops, community gatherings, and virtually anything that could reasonably be construed as protected permissible expressive associational activity. See, *Santropietro v. Howell*, 857 F.3d 980, 989 (9th Cir. 2017) ("Association for the purpose of engaging in protected activity is itself protected by the First Amendment. '[I]mplicit in the right to engage in activities protected by the First Amendment' is 'a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.'")(citing *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622, 104 S.Ct. 3244, 3252 (1984)).

178.    Most of the named Plaintiffs and Plaintiff Class Members were born and raised and live in East County. As a result of Defendants' unconstitutional policies and practices in enforcing and threatening to enforce their Municipal Codes, Local Ordinances, and State Penal Code violations in manners that literally preclude Named Plaintiffs, Class Members, and Disabled Subclass Members from physical presence in San Diego's East County, Plaintiffs are substantially prohibited from exercising their rights to expressive association protected by the First Amendment, or to associate with others in the pursuit of political, social, economic, educational, religious, and cultural ends.

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

179.    Defendants' actions have removed, and are designed to remove, Plaintiffs from their entire support network (including access to employment opportunities), family, and friends. This further marginalizes Plaintiffs, under color of law, making access to resources more complex and unduly restricting them from exercising their rights to familial and expressive association.

180.    Plaintiffs have suffered and will continue to endure emotional and mental distress as well as humiliation because of this violation of their rights. Defendants' unlawful conduct and the resulting injuries entitle Named Plaintiffs, Class Members, and Disabled Subclass Members to compensatory damages for emotional distress. Named Plaintiffs and putative Class Members and Disabled Subclass Members are also entitled to injunctive and declaratory relief, restitution, and attorneys' fees and costs.

## FIFTH CLAIM FOR RELIEF
### Denial of Right Against Unreasonable Search and Seizure- Under Article 1, §13 of the California Constitution
### (All Plaintiffs Against All Defendants)

181.    Plaintiffs re-allege and incorporate by reference all the above allegations as though fully set forth herein.

182.    The California Constitution involves even greater protections than the US Constitution with respect to arrest, search, and seizure. See Cal. Const., Art. I, §13; *In re Lance W.*, 37 Cal. 3d 873, 879 (1985).

183.    Defendants have intentional and active policies, customs, and practices of conducting sweeps, raids, searches, property seizures and destruction, arrests, and "move along" orders designed and intended to chase, harass and threaten unhoused people, including Named Plaintiffs and Class Members, without providing proper notice, nor of any services or places to be or offers, of such. Such policies and actions violate the protections of Article I, Section 13 of the California Constitution. Plaintiffs ask the Court to enjoin such further conduct by Defendants.

## SIXTH CLAIM FOR RELIEF
### Violation of Prohibition Against Cruel or Unusual Punishment
### Under Article I, §17 of the California Constitution
### (All Plaintiffs Against All Defendants)

184.    Plaintiffs re-allege and incorporate by reference all the above allegations as though fully set forth herein.

185.    Defendants' actions and practices of threatening, harassing, sweeping, arresting, citing, fining, and taking and destroying the property of, hundreds of unhoused people, when those people have no choice but to live in public space, constitute inhumane punishment that does not respect the intrinsic worth of unhoused individuals as human beings in violation of California's prohibition against cruel or unusual punishment.

186.    The California Constitution protects citizens against all cruel or unusual punishments, including those that may not be considered violations of the Eighth Amendment to the US Constitution. *See California v. Carmony*, 127 Cal. App. 4th 1066, 1085 (2005) (recognizing this distinction is "purposeful and substantive rather than merely semantic"); *In re Alva*, 33 Cal. 4th 254, 291 n. 20 (2004). Critical to the difference in analysis is whether the government is "treat[ing] its [residents] with respect for their intrinsic worth as human beings." *Carmony*, 127 Cal. App. 4th at 1085 (citations omitted). Defendants do not treat Plaintiffs with such respect.

187.    Defendants' customs and practices of raiding, sweeping, threatening, chasing, and destroying the property of hundreds of unhoused people, when those people have no choice but exist in public space, constitute inhumane punishment.

188.    The provisions of the California Constitution are self-executing and create a private right of action for declaratory or injunctive relief. *Katzberg v. Regents of Univ. of Cal.*, 29 Cal. 4th 300, 307 (2002). Accordingly, Named Plaintiffs and Class Members request that this Court grant injunctive relief preventing Defendants from continuing these and all related actions.

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

### SEVENTH CLAIM FOR RELIEF
**Violation of Procedural Due Process and Equal Protection**
**California Constitution, Article 1, §7(A).**
**(All Plaintiffs Against All Defendants)**

189.    Plaintiffs re-allege and incorporate by reference all the above allegations as though fully set forth herein.

190.    In adopting and implementing these policies and practices with the intent to harm and disadvantage homeless persons in the San Diego's East County, the Defendants have violated the Equal Protection Clause of the California Constitution, Article 1, § 7(a).[33]

191.    The due process protections under the California Constitution are more expansive than those under the U.S. Constitution. *See* Cal. Const., Art. I, §§ 7(a), 15; *Ryan v. Cal. Interscholastic Federation-San Diego Section*, 94 Cal. App. 4th 1048, 1070 (2001) ("procedural due process under the California Constitution is much more inclusive and protects a broader range of interests than under the federal Constitution") (citations omitted).

192.    The California Constitution requires that "even in cases in which the decision-making procedure will not alter the outcome of governmental action, due process may nevertheless require that certain procedural protections be granted the individual in order to protect important dignity values." *People v. Ramirez*, 25 Cal. 3d 260, 268 (1976). The purpose of these safeguards is "to ensure that the method of interaction itself is fair in terms of what are perceived as minimum standards of political accountability, and of modes of interaction which express a collective judgment that human beings are important in their own right, and that they must be treated with understanding, respect, and even compassion." *Id.*

---

[33] *See, Footnote 16, above.*

193.    "Due process safeguards…must be analyzed in the context of the principle that freedom from arbitrary adjudicative procedures is a substantive element of one's liberty." *Id*. at 268. Defendants' policies and actions are based on their animus towards this disfavored group and thus violate safeguards afforded by the California Constitution that promote due process and equal protection under law.

194.    Defendants' policies, customs, and practices of threatening, chasing, sweeping, and seizing and destroying unhoused people's personal belongings, without opportunity to recover such belongings, violate the basic tenants of procedural due process, and fail to confer the dignity, respect, and compassion required by the California Constitution.

195.    Plaintiffs ask the Court to enjoin such further conduct by Defendants.

### EIGHTH CLAIM FOR RELIEF
**Exposure to a State-Created Danger**
**Article I, §7(a) of the California Constitution**
**(All Plaintiffs Against All Defendants)**

196.    Plaintiffs re-allege and incorporate by reference all the above allegations as though fully set forth herein.

197.    Government actions that affirmatively place persons in a position of danger deprive those persons of substantive due process rights guaranteed by the California Constitution. Cal. Const., Art. I, § 7(a).

198.    Defendants' policies, customs, actions and practices of removing unhoused people from public spaces by repeatedly chasing them away with raids and sweeps and threats, by preventing them from gathering their possessions, by seizing and destroying their property, such as tents and personal items, and without providing or offering any services or alternatives, endanger the lives, health, and safety of unhoused people, including Plaintiffs, Class Members, and Disabled Subclass Members, in ways that shock the conscience. Defendants know or should know that their actions endanger the health and safety of unhoused individuals.

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

199.    Defendants' continued actions violate the California Constitution's prohibition of state-created-dangers when they force Plaintiffs, Class Members, and Disabled Subclass Members into increasingly dangerous and life-threatening situations, leaving these people "worse off." As a direct and proximate result of these policies and practices, Defendants have affirmatively acted by repeatedly chasing Plaintiffs, Class Members, and Disabled Subclass Members away from one location to another, and without their now-destroyed tents and life-sustaining belongings, further and further to locations that are devoid of basic services, protection from the elements, and/or disability access, and where they face elevated risks of harm.

200.    As a direct and proximate result of Defendants' practices and policies described herein, Plaintiffs', Class Members', and Disabled Subclass Members' health and safety were and are placed in grave danger. Plaintiffs, Class Members, and Disabled Subclass Members have been and continue to be injured and damaged in that they suffered serious harm and were forced to bear the medical costs of those harms. In addition, Plaintiffs suffered emotional and mental distress because of the danger created by Defendants' unlawful actions. As such, Plaintiffs ask the Court to enjoin such further conduct by Defendants.

### NINTH CLAIM FOR RELIEF
### Inverse Condemnation - Cal. Const. Art I §19
### (All Plaintiffs Against All Defendants Except City of San Diego)

201.    Plaintiffs re-allege and incorporate by reference all the above allegations as though fully set forth herein.

202.    California Constitution, Article I §19(a), states: "Private property may be taken or damaged for public use and only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court, for the owner."

203.    Defendants have engaged in the regular and mass taking and destruction of homeless people's private property. In return, the Defendants have not offered or paid any just compensation.

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

204.     Defendants' taking and destruction of Plaintiffs' property has occurred with no compensation, assistance, shelter or alternatives offered or given to unhoused individuals, and thus constitutes inverse condemnation in violation of the California Constitution. Accordingly, Plaintiffs ask the Court to enjoin such further conduct by Defendants.

**TENTH CLAIM FOR RELIEF**
**Discrimination Against Persons with Disabilities**
**(Americans With Disabilities Act (ADA), 42 U.S.C. §12131 *et. seq.***
**and California Government Code §11135)**
**((All Disabled Subclass Member Plaintiffs Against All Defendants))**

205.     Plaintiffs re-allege and incorporate by reference all the above allegations as though fully set forth herein.

206.     Title II of the ADA provides "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132. Such discrimination includes administration of programs in a way that has a discriminatory effect on people with disabilities, or that has the "effect of defeating or substantially impairing the accomplishment of the objectives of the service, program, or activity with respect to individuals with disabilities." 28 C.F.R. §35.130 (b)(3)(ii).

207.     A government's removal of unhoused individuals and their possessions from public property, as well as the provision of services or shelter to unhoused individuals, are programs, services, and/or activities covered by Title II of the ADA. The opportunity to comply with a public entity's directives in a manner consistent with one's disability is a covered "benefit" under the ADA. Administration of programs or activities in a way that unduly burdens disabled persons by imposing a different or greater burden on them is "discrimination."

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

208.    The ADA's implementing regulations specifically proscribe "methods of administration" that "defeat or substantially impair accomplishment" of a program's objectives as to individuals with disabilities. 28 C.F.R. § 35.130(b)(3). They also prohibit providing aids, benefits, or services in such a way that qualified individuals with a disability are not afforded an "equal opportunity to obtain that same result…as that provided to others." 28 C.F.R. § 35.130(b)(1)(iii).

209.    Failure to provide proper assistance, additional time, or other supports to disabled individuals when demanding that unhoused people remove themselves or their belongings from public space is a violation of the ADA. See, *Cooley v. City of Los Angeles*, 2019 WL 3766554, at *6 (C.D. Cal. Aug. 5, 2019) ("Cooley […] told LAPD officers that she needed help to carry her property because of her disability and that she lost most of her essential property because her needs were not accommodated […] *[T]he City's practices, even if facially neutral, violate the ADA by unduly burdening people with disabilities such as Cooley*").

210.    Failing to provide shelter options to unhoused people that meet their disability needs violates the ADA, as it means shelter is functionally unavailable to them because of their disability. *See Bloom v. City of San Diego*, 2018 WL 9539238, at *3 (S.D. Cal. June 8, 2018) ("[B]ecause of plaintiffs' disabilities, they cannot seek housing in a homeless shelter because the homeless shelter cannot accommodate their disabilities…*[and]* the shelters are 'functionally unavailable' to them").[34]

211.    Defendants discriminate against unhoused individuals by willfully and intentionally failing to provide adequate notice, time, and assistance to unhoused people with disabilities who are forced to constantly and repeatedly move themselves and their belongings from public space in response to Defendants'

---

[34]    Cal. Gov. Code §11135 is intended to prohibit all forms of discrimination prohibited under Title II of the Americans with Disabilities Act and, where possible, to be more protective of people with disabilities. By administering its programs for unhoused people and response to homelessness in a manner that has a discriminatory effect on people with disabilities, Defendants have violated, and continue to violate, Section 11135.

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

homeless sweeps. Defendants further discriminate against unhoused individuals with disabilities by arresting, citing, fining, and seizing the property of unhoused people for sleeping, lodging, or camping in public without first identifying their individualized needs and whether Defendants' shelter options, if any exist, can actually meet those needs.

212.    Forcibly removing disabled unhoused residents and chasing them to other unknown places without first identifying and offering alternative shelter or services that meet the individualized needs of people with disabilities, as Defendants are doing, does not serve any compelling or bona fide or legitimate interest.

213.    Plaintiffs ALBONE, BISHOP, GILLETTE, LEGGOTT, McCOY, WHALEY, and a significant number of other unhoused individuals, Class Members, and Disabled Subclass members served by Plaintiff HOPE, have physical and/or mental health disabilities and have been injured by Defendants' discriminatory response to unhoused residents. These Plaintiffs are each "qualified individual[s] with disability[ies]" as defined by the ADA. 42 U.S.C. §12102; 42 U.S.C. §12131; 28 C.F.R. §35.104.

214.    Defendants are "public entities" as defined by the ADA (42 U.S.C. §12131; 28 C.F.R. §35.104). Defendants have discriminated against Individual Disabled Plaintiffs and Disabled Subclass Members by enforcing relocation directives and conducting property seizures and destruction activities in ways that impose different and greater hardships on disabled Plaintiffs as a result of their disabilities.

215.    Defendants have denied Plaintiffs meaningful access to the benefit of compliance with their directives to relocate in a manner consistent with their disabilities. As a direct and proximate cause of Defendants' actions, Individual Disabled Plaintiffs and Disabled Subclass Members have suffered, and will continue to suffer, injury and loss.

216.    Plaintiffs ALBONE, BISHOP, GILLETTE, LEGGOTT, McCOY, WHALEY, and a significant number of unhoused individuals served by Plaintiff, HOPE, have physical and/or mental health disabilities and have been injured by Defendants' discriminatory response to unhoused residents with disabilities through their actions and failure to adopt policies and procedures that protect those unhoused individuals with disabilities. Defendants' actions and those of its employees, agents, contractors, and law enforcement agencies were taken pursuant to the Defendants' policies, patterns, and/or customs of discriminating against people with disabilities by imposing different and greater hardships on them and denying them the benefit of compliance with their directives in a manner consistent with their disabilities. These policies, patterns, and/or customs violate the ADA. All Individual Plaintiffs with disabilities and Disabled Subclass Members are entitled to injunctive and declaratory relief prohibiting Defendants from engaging in these unconstitutional customs, policies, and practices.

### ELEVENTH CLAIM FOR RELIEF
**Failure to Provide Reasonable Accommodations; and
Intentional Discrimination / Deliberate Indifference
(Americans with Disabilities Act (ADA)
42 U.S.C. §12132; 42 U.S.C. §12133)
(All Disabled Subclass Member Plaintiffs Against All Defendants)**

217.    Plaintiffs re-allege and incorporate by reference all the above allegations as though fully set forth herein.

218.    To avoid discriminating against individuals with disabilities, public entities are required to provide Reasonable Accommodations and/or Modifications to policies or practices. A public entity that fails to provide reasonable disability accommodations, particularly after such have been requested, commits a stand-alone violation of Title II of the ADA. 28 C.F.R. §35.130(b)(7).

219.    A public entity has a duty to consider all resources available for use in the funding and operation of a service, program, or activity when determining whether a requested accommodation can be offered. If a public entity determines that a particular accommodation cannot be provided, it has a duty to provide a written statement of the reasons for reaching that conclusion. 28 C.F.R. §35.164.

220.    Defendants violated their duties and Plaintiffs' rights under the ADA by ignoring or otherwise failing to respond to each Individual Plaintiffs' Reasonable Accommodation request including *in person* requests for assistance in relocation when disabled Plaintiffs were obviously struggling with mobility challenges such as walkers, canes, and wheelchairs. Furthermore, Defendants failed to investigate the viability of Plaintiffs' requested accommodations and did not engage in any interactive process with them other than laughing at them and throwing away their property, including their prescription medications, walkers, canes, and wheelchairs, along with other irreplaceable and necessary belongings.

221.    Defendants fail to respond to, investigate or engage with Reasonable Accommodation requests, and intentionally operate under an absence of any policies or processes for receiving, processing, and responding to such requests, and thereby disregard and ignore such requests from unhoused persons with disabilities.

222.    Defendants further violate their duties and Individual Plaintiffs' rights under the ADA by failing to provide Reasonable Accommodations for Individual Plaintiffs' with mobility impairments, even though Individual Plaintiffs specifically requested such. Instead, Defendants toss Plaintiffs' mobility aids.

223.    Defendants have committed acts of intentional discrimination under Title II of the ADA by demonstrating deliberate indifference, because they had knowledge that harm to disabled persons and their rights, including Named Disabled Plaintiffs' and Disabled Subclass Members' rights, under the ADA were substantially likely to occur, and they failed to act upon such likelihood.

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

224.    Individual Plaintiffs' needs for reasonable and necessary disability accommodations were obvious in many instances and known to Defendants, and were requested. Many Individual Plaintiffs with disabilities have visible mobility impairments, as they rely on walkers, canes, and/or wheelchairs. Plaintiffs made reasonable accommodation requests during, and in advance of, "homeless sweeps" and/or in writing to Defendants, which Defendants acknowledged receiving.

225.    Defendants ignored, failed to investigate, respond to, or fulfill Individual Plaintiffs' Reasonable Accommodation requests, or to offer any modification of its policies, practices, or customs for enforcement of relocation directives and property seizures and disposal and/or destruction activities. As a direct and proximate result of Defendants' past and continued failure to provide Reasonable Accommodations under the ADA, all Plaintiffs with disabilities have suffered and continue to suffer injury and loss.

226.    Defendants do not have, and refuse to create or follow, adequate policies and processes for receiving, processing, and responding to Reasonable Accommodation requests, and they continue to engage in policies, patters, practices, and/or customs of disregarding Reasonable Accommodation requests from unhoused persons with disabilities. Accordingly, Plaintiffs are entitled to injunctive and declaratory relief prohibiting Defendants from failing to provide Reasonable Accommodations in the future. As a direct and legal result of Defendants' actions and omissions, the disabled Individual Disabled Plaintiffs and Disabled Subclass Members have suffered injury and loss, including serious emotional distress, and are entitled to compensatory and declaratory damages. In addition, Individual Disabled Plaintiffs and Disabled Subclass Members are entitled to injunctive and declaratory relief, restitution, and attorneys' fees and costs.

/ / /

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

## TWELFTH CAUSE OF ACTION
### Violation of §504 of the Rehabilitation Act of 1973
### (29 U.S.C. §794)
### (All Disabled Subclass Member Plaintiffs Against All Defendants)

227.    Plaintiffs re-allege and incorporate by reference all the above allegations as though fully set forth herein.

228.    Defendants receive financial assistance from the federal government whose purpose is to finance a broad range of services, including health care, education, social services, infrastructure, and public safety.

229.    Section 504 of the Rehabilitation Act of 1973 requires that qualified persons with disabilities be provided meaningful access to federally funded programs. In order to assure such access, Reasonable Modifications are required unless the recipient of federal funding can demonstrate that such modifications would result in a fundamental alteration in the nature of the program (29 U.S.C. §749; 24 C.F.R. §§8.3; 8.4; *Alexander v. Choate*, 469 U.S. 287, 301 (1985).

230.    Defendants' actions and omissions have denied Named Disabled Plaintiffs' and Disability Subclass Members' rights to Reasonable Modifications thereby denying them meaningful access to public facilities and places to safely be and sleep, and to the amenities that the County, Cities and Caltrans offer their residents without disabilities, and subjecting them to discrimination on the basis of their disability, in violation of §504 of the Rehabilitation Act. Defendants' actions also effectively undermine Federal assistance that is provided by other entities.

231.    As a result of Defendants' violations of the Rehabilitation Act, Plaintiffs have suffered and continue to suffer injuries, including emotional injuries, and are entitled to compensatory damages, including damages for emotional distress. In addition, Named Disabled Plaintiffs and Disability Subclass Members are entitled to injunctive and declaratory relief, restitution, and attorneys' fees and costs.

1

**THIRTEENTH CLAIM FOR RELIEF**
**Violation of Mandatory Statutory Duty**
**(Cal. Gov't Code §815.6; Civ. Code §2080 *et. seq.; and* §3422.)**
**(All Plaintiffs Against All Defendants)**

232.    Plaintiffs re-allege and incorporate by reference all the above allegations as though fully set forth herein.

233.    California Government Code §815.6 creates a cause of action if and when a public entity fails to discharge a mandatory duty imposed by enactment. California Civil Code §2080 *et. seq.* imposes a mandatory statutory duty on public entities and their employees, agents, contractors, and law enforcement agencies to maintain or safeguard unattended property over which they have charge, and also imposes a mandatory duty to abide by specific procedures and processes related to the storage, documentation, and disposition of property.

234.    Defendants' above-described actions, customs, policies, practices, and conduct violate Civil Code §2080 *et seq.*, by, among other things, failing to safeguard the confiscated and unabandoned personal property of Named Plaintiffs, Class Members, and Disabled Subclass Members found on public land, failing to inform the owners of the personal property within a reasonable time of finding it, failing to document the property found, and failing to make restitution to its owners or to make arrangements to permit them to retrieve it, all of which are mandatory duties under §2080 et seq. for which Defendants are liable.

235.    Defendants' employees, agents, contractors, and law enforcement agencies took charge of Plaintiffs' property, which was not abandoned. Rather than complying with their mandatory duties and obligations under Civil Code §2080 *et seq.* to maintain, document, and store property for temporary safekeeping, Defendants and their employees, agents, contractors, and law enforcement summarily destroyed these items as part of their efforts to intimidate and chase homeless citizens "away" from their resident towns.

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

236.     Defendants' employees, agents, and contractors failed to use due care or protect and preserve Plaintiffs' property as required by Civil Code §2080 *et seq.* when Defendants summarily destroyed Plaintiffs' property in public locations; failed to provide written receipt or notice that the property would be destroyed; and failed to track or otherwise store the property so that it could be recovered upon request.

237.     The failures of Defendants' employees, agents, and/or contractors to comply with the mandatory duties outlined in Civil Code §2080 *et seq.* proximately caused Plaintiffs' harm, including property loss, emotional distress, anxiety, and pain and suffering, and Plaintiffs are entitled to compensatory damages for such.

238.     Defendants' violations of law are ongoing and continue to harm Plaintiffs. Plaintiffs are therefore entitled to injunctive relief to prevent further breaches of Defendants' obligations. See Cal. Civ. Code §3422.

### FOURTEENTH CLAIM FOR RELIEF
**Violation of the Bane Act - California Civil Code § 52.1**
**(All Plaintiffs Against All Defendants)**

239.     Plaintiffs re-allege and incorporate by reference all the above allegations as though fully set forth herein.

240.     The Bane Act, Civil Code §52.1 *et seq.*, establishes a remedy for actual or attempted interference with existing rights under Federal and California law. In particular, §52.1(a) provides that if a person interferes, or attempts to interfere, "by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or the rights secured by the Constitution or laws of this State," then the Attorney General, or any District or City Attorney, may bring a civil action for equitable relief. Section 52.1(b) further allows "[a]ny individual" so aggrieved to sue for "[statutory] damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured." Civ. Code §52.1(b); *see also, Venegas v. County of Los Angeles*, 32 Cal. 4th 820, 841-43 (2004).

241.     The word "interferes," as used in the Bane Act, means "violates." See, *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 336-37 (1998). Thus, the essence of a Bane Act claim is that the Defendants, by threats, intimidation or coercion, violated some statutory or Constitutional right, be it State or Federal, of the Plaintiff. *Id.* at 344. The "[u]se of law enforcement authority to effectuate a stop, detention …, and search can constitute" a threat, intimidation or coercion. *Cole v. Doe 1 Through 2 Officers of Emeryville Police Dept.*, 387 F. Supp. 2d 1084, 1103 (N.D. Cal. 2005). Whether or not an action qualifies as a "threat, intimidation or coercion" is broadly construed. *See Venegas*, 32 Cal. 4th at 850-51.

242.     Defendants' policies, practices, and procedures of summarily sweeping, raiding, chasing, threatening, and harassing Plaintiffs, and seizing and destroying Plaintiffs' property, constitute interference, and attempted interference, by threats, intimidation, and coercion, with Plaintiffs' exercise and enjoyment of rights secured by the laws of the United States and California, in violation of Civil Code §52.1.

243.     There was and is no lawful justification for Defendants to threaten, intimidate, or coerce any of the Plaintiffs or Class Members, or to attempt to use threats, intimidation, or coercion as described herein to interfere with Plaintiffs' exercise of rights. Defendants' actions were and are taken willfully and with malice and oppression in order to deter and/or prevent Plaintiffs and Class and Subclass Members from exercising their protected constitutional and statutory rights.

244.     Plaintiffs, Class Members, and Disabled Subclass Members are entitled to, and seek, injunctive and other equitable relief to protect their peaceful exercise and enjoyment of their rights.

### FIFTEENTH CLAIM FOR RELIEF
**Common Law Conversion**
**(All Plaintiffs Against All Defendants Except City of San Diego)**

245.     Plaintiffs re-allege and incorporate by reference all the above allegations as though fully set forth herein.

246.    Named Plaintiffs, Class Members, and Disabled Subclass Members were at all relevant times the owners of the personal property confiscated and destroyed by Defendants. These Plaintiffs remain entitled to the possession of their personal property. The property which was confiscated, stolen, seized, and destroyed by Defendants and their agents included tents, clothing, prescription medications, medical devices, irreplaceable personal memorabilia, and important documents, all of which were particularly valuable to Named Plaintiffs, Plaintiff Class Members, and Disabled Subclass Members in part because these belongings amounted to most, if not all, of the few possessions that these Plaintiffs owned.

247.    Defendants' practices and conduct denied Plaintiffs the peaceful use and possession of their property and constituted an unlawful conversion of that property to the possession and control of Defendants, and Plaintiffs are entitled to recovery of the value of such.

248.    In addition, Plaintiffs, Class Members, and Disabled Subclass Members are entitled to relief for the emotional and mental distress suffered, as well as humiliation due to the repeated violations of their property rights. Defendants' unlawful actions in "taking" Plaintiffs', Class Members', and Disabled Subclass Members personal property for Defendants' own personal use, and the resulting injuries, entitle Plaintiffs and Class Members to compensatory damages, injunctive and declaratory relief, restitution, and recovery of their attorneys' fees and costs.

**SIXTEENTH CAUSE OF ACTION FOR RELIEF**
**Declaratory Relief**
**(All Plaintiffs Against All Defendants)**

249.    Plaintiffs re-allege and incorporate by reference all the above allegations as though fully set forth herein.

250.    An actual controversy exists between Plaintiffs and Defendants as to whether Defendants have violated 42 U.S.C. §1983 by inflicting cruel and unusual punishments upon Plaintiffs by punishing their homeless status by citing, arresting,

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

pressuring and obtaining stay-away orders, and otherwise punishing Plaintiffs by utilizing Municipal Codes, Ordinances, and State Penal Code violations to criminalize homelessness. In addition, an actual controversy exists as to whether Defendants have violated Plaintiffs' United States and California Constitutional rights, including their rights to Equal Protection, Due Process, freedom from Unreasonable Search and Seizure, and Cruel and Unusual Punishment.

251.     Plaintiffs, Class Members, and Disabled Subclass Members are persons desiring declarations of their rights and duties with respect to Defendants, within the meaning of CCP §1060 because Plaintiffs are, and represent the interests of, unhoused residents and taxpayers directly affected by Defendants' actions.

252.     Plaintiffs desire a judicial determination of the duties of Defendants, and of Defendants' non-compliance with 42 U.S.C §1983, and whether Defendants have abridged or violated Plaintiffs' Constitutional rights. Such declaration is necessary and appropriate so that Defendants can comply with their duties, and so that the rights, health, and safety of Plaintiffs, Class Members, and Disabled Subclass Members and the public can be protected and not further endangered.

## SEVENTEENTH CLAIM FOR RELIEF
### Injunctive Relief
### (All Plaintiffs Against All Defendants)

253.     Plaintiffs re-allege and incorporate by reference all the above allegations as though fully set forth herein.

254.     Defendants' ongoing "sweeps," threats, intimidation, seizure, and summary destruction of Plaintiffs' personal property leave Plaintiffs without the essential survival gear they need to protect themselves from the elements and with nowhere to seek alternative shelter. Moreover, Defendants make absolutely *no* effort to retain obviously valuable property so that it can be later recovered by its owners. As a matter of both Constitutional and statutory law, there is no lawful basis upon which Defendants may summarily destroy Plaintiffs' personal property.

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

255.    Defendants' actions in seizing and destroying Plaintiffs' personal property, without adequate notice and opportunity to be heard, violates the U.S. and California Constitutions. Moreover, Defendants' failure to store Plaintiffs' property and permit Plaintiffs the opportunity to claim it violates State and Federal laws.

256.    Plaintiffs ask this Court to enjoin Defendants from: (1) issuance of citations or threats that criminalize Plaintiffs for their involuntary status of homelessness and without an adequate offer of shelter; and (2) taking, removing, and destroying Plaintiffs' personal property without proper notice, due process, and without reasonable opportunity to retrieve their property at a later time. Plaintiffs also request that the Court issue an order restraining Defendants from taking any future actions in furtherance of, and in the manners set forth in this Complaint, which essentially penalize the unhoused for their status of being unhoused.

257.    Unless and until Defendants are enjoined by order of this Court from failing to comply with their obligations under the law, and enjoined from issuing citations enforced in violation of Plaintiffs' Constitutional rights, and until Defendants are ordered to comply with their obligations to refrain from issuing such citations unless and until an alternative is available to Plaintiffs as set forth above, Plaintiffs are suffering and will suffer significant and irreparable injury including:

(a) They will be deprived of rights under Federal and State law;

(b) They will suffer irreparable injury which cannot adequately be remedied by money;

(c) They will suffer injuries which are difficult or impossible to quantify; and

(d) The important rights protected by the California and United States Constitutions may be forever compromised and lost.

## **RELIEF SOUGHT**

WHEREFORE, Plaintiffs respectfully request relief as follows:

/ / /

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

## A. Declaratory Relief:

1. An order certifying this action as a class action pursuant to F.R.Civ.P. Rule 23(a) and Rule 23(b)(2), for proposed Plaintiff Class, together with any appropriate Subclasses, with the named Plaintiffs as class representatives;

2. A declaratory judgment that Defendants' seizure and destruction of the personal property of unhoused people violates the Fourth and Fourteenth Amendments to the U.S. Constitution and Article I, §7(a) and §13 of the California Constitution;

3. A declaratory judgment that Defendants' ongoing enforcement and seizure practices are government programs that discriminate against unhoused people with disabilities in violation of 42 U.S.C. §12131 and Cal. Gov. Code §11135 and that such practices amount to intentional discrimination and deliberate indifference towards unhoused people with disabilities in violation of 42 U.S.C. §12132 and 42 U.S.C. §12133;

4. A declaratory judgment that Defendants have violated the Americans with Disabilities Act 42 U.S.C. §12131 *et seq*., failed to provide reasonable accommodations 42 U.S.C. §12132, intentionally discriminated or with deliberate indifference against disabled persons under 42 U.S.C. §12132 and 42 U.S.C. §12133, and violated §504 of the Rehabilitation Act of 1973 pursuant to 29 U.S.C. §794;

5. A declaratory judgment that Defendants violated their mandatory statutory duties and Cal. Gov. Code §815.6; Cal. Civ. Code §2080 *et. seq*; and Cal. Civ. Code §3422;

6. A declaratory judgment that Defendants' ongoing actions violate California Civil Code §52.1;
*and*

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

7. A declaratory judgment that Defendants' conduct of confiscating and destroying Plaintiffs' personal property constitutes an unlawful conversion of that property to the possession and control of Defendants.

## B. Injunctive Relief:

1. Order that Defendants cease the unlawful seizure and destruction of all personal property of unhoused individuals, including unattended personal property. This relief shall include:

   a. Ensuring compliance with constitutional protections and statutory obligations, including Civil Code §2080 *et seq*, on the part of all Defendants' agents, agencies, and funded contractors;

   b. Adopting lawful storage and documentation policies and practices to ensure all items seized by Defendants and their agents are properly tagged and stored for post-seizure retrieval. This documentation must include records of items that the Defendants and their agents seize and destroy as "trash"; *and*

   c. Providing adequate notice prior to any property seizure, disposal, or destruction at encampment removal operations;

2. Order that Defendants suspend all operations involving the removal of unhoused people and their property from public locations until a lawful plan with adequate and proper alternatives is put in place to address the violations alleged herein, and prevent future violations; *and*

3. Grant an injunction enjoining and restraining Defendants from actions that discriminate against people with disabilities in the administration of their programs in violation of 42 U.S.C. §12131 and Cal. Gov. Code §11135.

DREHER LAW FIRM
350 W. ASH STREET SUITE 101
SAN DIEGO, CA 92101

**C. Mandamus Relief:**

1. Issue a mandatory order compelling Defendants to cease all activities that violate the Fourth, Eighth, and/or Fourteenth Amendments to the U.S. Constitution and Article I, §§7(a), 13, and 17 of the California Constitution;

2. Issue a mandatory order requiring Defendants to reasonably modify their programs to avoid any continued discrimination against unhoused people, pursuant to 42 U.S.C. §12131 and Cal. Gov. Code §11135 and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 *et. seq.*;

3. Issue a mandatory order requiring Defendants to conduct "self-evaluation" pursuant to 28 CFR §35.105 of current services, policies and practices related to property clearing and homeless encampment clearing operations, and evaluate any resulting undue burdens of these services, policies and practices on unhoused people,
   *and*

4. Issue a mandatory order requiring Defendants to submit to regular monitoring and compliance checks by the Court at Defendants' expense.

**D. Other Relief:**

1. For compensatory damages to all Plaintiffs and Class and Sub-Class members for destruction of their personal property and emotional distress, in an amount that is fair and reasonable, to be determined at trial;

2. For punitive damages pursuant to 42 U.S.C. §1983 and any other applicable laws or statutes, as appropriate in an amount sufficient to deter and make an example of the Defendants;

3. For reasonable attorneys' fees and costs of suit pursuant to 42 U.S.C. §1983, §1988, and any other applicable provisions;
   *and*

4. For such other Declaratory, Injunctive, Mandamus and other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby request and demand a trial by jury on all issues so triable.

Dated: January 5, 2025

**LAW OFFICE of**
**BLANCHE E. MAINE**

By: _Blanche E. Maine_

- *and* -

Dated: January 5, 2025

**DREHER LAW FIRM**

By: _Robert Scott Dreher_

- *and* -

Dated: January 5, 2025

**MILLER LAW FIRM**

By: *Matthew R. Miller*
Matthew R. Miller

Attorneys for Plaintiffs and the Class

## SIGNATURE CERTIFICATION

*Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures Manual, I hereby certify that the content of this document is acceptable to Ms. Maine and Mr. Miller, Plaintiffs' co-counsel herein, and that I have obtained their authorizations to affix their electronic signatures to this document.*

By: */s/ Robert Scott Dreher*
Robert Scott Dreher