UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

HOPE FOR THE HOMELESS
LAKESIDE, INC., et al.,

Plaintiffs,

v.

COUNTY OF SAN DIEGO, et al.,

Defendants.

Case No.:  3:24-cv-1009-L-MSB

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

[ECF No. 35]

Pending before the Court is a third amended complaint (ECF No. 30, "Compl.") filed by Hope for the Homeless Lakeside ("Hope") and sixteen homeless individuals against the County of San Diego (the "County"), City of Lakeside ("Lakeside"), City of Santee ("Santee"), and two directors of California Department of Transportation ("Caltrans" and "Caltrans Defendants," respectively).[1]  The case arises from Defendants' actions taken to remove homeless encampments in the East San Diego County while

---

[1]    Defendant Tony Taveras, who was named in his capacity as Director of Caltrans (Compl. ¶ 84), is no longer serving in this capacity.  (ECF No. 35-1, "Mot." at 13 & n.2.) Pursuant to Federal Rule of Civil Procedure 25(d), his "successor is automatically substituted as a party."  Accordingly, the current Caltrans Director Dina El-Tawansy is substituted in his place.  (*See* Mot. at 13 n.2.)

1

confiscating and/or destroying Plaintiffs' belongings, including vital documents such as driver's licenses and birth certificates, medications, family photos, and outdoor survival necessities. Plaintiffs allege violation of their legal rights under federal and California law. The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and exercises supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

The County,[2] Santee, and the Caltrans Defendants (collectively, "Defendants"), jointly filed a motion to dismiss. Plaintiffs opposed and Defendants replied. The Court decides the motion on the papers submitted without oral argument. *See* Civ. L. R 7.1(d.1). For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## I.      Hope's Article III Standing

Under Article III of the United States Constitution Defendants challenge Hope's standing to assert any claims in this action. "[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)."[3] *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011).[4]

Under Article III, federal courts must satisfy themselves that every plaintiff has such a personal stake in the outcome of the controversy as to warrant federal jurisdiction. *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009). Three elements are required to show standing:

> (1) [the plaintiff] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2)

[2]      The County suggests that the motion is also filed on behalf of Lakeside, an unincorporated community governed by the County. (Mot. at 13 & n.1; *see also* Compl. ¶ 82.)

[3]      All references to Rule or Rules are to the Federal Rules of Civil Procedure.

[4]      Unless otherwise noted, internal quotation marks, ellipses, brackets, citations, and footnotes are omitted from citations.

the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 180-81 (2000); *see also Spokeo, Inc. v. Robins,* 578 U.S. 330, 338 (2016); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Defendants make a facial attack on Hope's organizational standing suggesting that Hope has not alleged an injury to itself sufficient for Article III standing. (ECF No. 35-1, "Mot." at 17-18.) A facial attack accepts the truth of the pleading allegations and asserts that they are insufficient on their face to invoke federal jurisdiction. *See, e.g., Harris v. KM Industrial, Inc.*, 980 F.3d 694, 699 (9th Cir. 2020).

Each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561; *see also Spokeo,* 578 U.S. at 338; *Maya*, 658 F.3d at 1068. This action is at the pleading stage. Plaintiffs therefore may rely on the allegations in their Complaint. *See Vasquez Perdomo v. Noem*, 148 F.4th 656, 673 (9th Cir. 2025). For purposes of a Rule 12(b)(1) motion to dismiss, "courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Maya*, 658 F.3d at 1068.

"[O]rganizations may have standing to sue on their own behalf for injuries they have sustained." *Food and Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 393 (2024) ("*Hippocratic Med.*"). An organization has standing to sue where a defendant's actions affected and interfered with its "core business activities," "frustrated its mission[,] and caused it to divert resources in response to that frustration of purpose." *Immigrant Defenders Law Center v. Noem*, 145 F.4th 972, 987 (9th Cir. 2025) / / / / /

3

("*Immigrant Defs.*") (citing *Hippocratic Med.*, 602 U.S. at 395); *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 663 (9th Cir. 2021).

Hope is a nonprofit corporation with a mission to care for the homeless residents of San Diego's East County. (Compl. ¶ 15.) It engages volunteers and donors to provide basic necessities and services to the homeless. (*Id.*) Plaintiffs allege that East County's homeless residents who are served by Hope are subjected to Defendant's violations, including destruction of personal property and imposition of move-along orders under threat of arrest. (*See id.* ¶ 154 and *passim.*) With these actions Defendants intentionally impede and undermine Hope's mission of providing basic necessities and services to homeless individuals. (*Id.* ¶ 15 ("HOPE's work has been increased and hampered and undone by Defendants' criminalization and property-destruction practices[.]"); *see also id.* ¶¶ 59, 158.)

Plaintiffs' allegations go beyond mere diversion of Hope's resources. They allege that Hope suffers an actual and concrete impairment of its core mission and activities. Plaintiffs therefore sufficiently allege an injury in fact for purposes of standing. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982); *see also Hippocratic Med.*, 602 U.S. at 602 (distinguishing between interference with the organization's core business activities and mere increase in expenses in response to a government action). They also sufficiently allege that the injury is fairly traceable to Defendants' violations and is likely to be redressed by a favorable outcome of this action.

Because Plaintiffs sufficiently allege Hope's organizational standing, the Court need not address Defendants' alternative contention that Hope lacks associational standing.

## II.    Caltrans Defendants' Eleventh Amendment Immunity

Defendants next move to dismiss all claims alleged against the Caltrans Defendants. They argue that the claims are barred by the sovereign immunity granted States by the Eleventh Amendment of the United States Constitution. "A sovereign

immunity defense is quasi-jurisdictional" and may be raised on a Rule 12(b)(1) motion. *See Sato v. Orange County Department of Education,* 861 F.3d 923, 927 n.2 (9th Cir. 2017).

The Eleventh Amendment "prohibits federal courts from hearing suits brought by private citizens against state governments, without the state's consent." *Natural Resource Defense Council v. California Department of Transportation,* 96 F.3d 420, 421 (9th Cir. 1996). This immunity "extends to state agencies and to state officers, who act on behalf of the state and can therefore assert the state's sovereign immunity." *Id.* However, "an important exception to this general rule" allows for suits against state officials "acting in violation of federal law." *Id.* at 422 (citing *Ex parte Young*, 209 U.S. 123 (1908).) This exception applies to violations of federal constitutional law as well as federal statutes. *Nat. Res. Def. Council,* 96 F.3d at 422. "[T]he inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim." *Verizon Maryland, Inc. v. Public Service Commission of Maryland*, 535 U.S. 635, 646 (2002).

The sovereign immunity exception under *Ex parte Young* has two limitations. First, the court must determine "whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md.,* 535 U.S. at 645. Federal courts "may not award retroactive relief that requires the payment of funds from the state treasury." *Nat. Res. Def. Council,* 96 F.3d at 422. Only "prospective declaratory or injunctive relief against state officers in their official capacities" is available. *Los Angeles County Bar Association v. Eu,* 979 F.2d 697, 704 (9th Cir. 1992) (*"Eu"*); *see also Verizon Md.,* 535 U.S. at 646. Second, the state official must have a "fairly direct" connection with the activity alleged to violate federal law. *Forward, Inc. v. Macomber,* 178 F.4th 470, 473 (9th Cir. 2026); *Yakama Indian Nation v. Locke*, 176 F.3d 467, 469-70 (9th Cir. 1999). A "generalized duty to enforce state law or general supervisory power" is not sufficient. *Forward,* 178 F.4th at 473; *Eu*, 979 F.2d at 704. / / / / /

5

Plaintiffs name the Caltrans Defendants in their official capacities.  (Compl. ¶¶ 84, 85; *see also* ECF No. 36, "Opp'n" at 11-12.)  The claims against them are limited to federal claims.  (Compl. ¶¶ 84, 85; *see also* Opp'n at 13-14.)  Defendants argue that the claims must nevertheless be dismissed because Plaintiffs improperly seek damages and do not allege that the Caltrans Defendants have a sufficient connection with the removal of homeless encampments.

Plaintiffs allege that Caltrans is a state agency which manages the state highway system and properties adjacent thereto.  (Compl. ¶ 84.)  Homeless individuals often camp on property adjacent to highways in East San Diego County.  (*See id.* ¶¶ 24, 49, 97, 111, 116.)  El-Tawansy, as Taveras's successor and in his capacity as a Caltrans director, is responsible for the operation and execution of Caltrans duties.  (Compl. ¶ 84.)  Fox, as Director of District 11, which includes San Diego County, is responsible for the operation of Caltrans programs, including development and implementation of Caltrans policies and activities in her district.  (*Id.* ¶ 85.)  "Defendants have intentional, active, and official policies, customs, and practices of seizing and destroying unhoused people's personal belongings[.]"  (*Id.* ¶ 155.)  Indeed, removal of homeless encampments from property adjacent to state highways, including removal of personal property which comprises the encampments, is one of Caltrans stated priorities.  *See* https://dot.ca.gov/housing-homelessness (last visited July 10, 2026.)[5]  Consistent with its stated priorities, Caltrans engages in the abatement of homeless encampments and removal of personal property.  (Compl. ¶¶ 86, 95.)  As reflected in Plaintiffs' individual experiences (*see passim id.* ¶¶ 21-26, 32-36, 49-58, 79, 97, 111), Caltrans homeless abatement activities in East San Diego County are frequent and ongoing.  (*See also* ¶¶ 97, 113; *see also id.* at 1, ¶¶ 13, 89, 118, 127, 139.)  The Caltrans Defendants' duties go beyond general supervisory powers

---

[5]    The Court takes judicial notice of the Caltrans official website page.  *See* Fed. R. Evid. 201.

over the state highways and encompass the shaping and implementation of homeless abatement programs as the agency's stated priority.  Based on the foregoing, Plaintiffs allege a sufficiently direct connection between the Caltrans Defendants and the ongoing abatement of homeless encampments.

Although damages are one of the requested forms of relief in this action (Compl. at 87), Plaintiffs seek only injunctive and declaratory relief against the Caltrans Defendants in order to cease the alleged ongoing activities.  (Opp'n at 10-11.)

Insofar as Plaintiffs sue Caltrans Defendants in their official capacities for ongoing violations of federal law and seek prospective injunctive and declaratory relief, Defendants' Eleventh Amendment arguments are rejected.

## III.    <u>Failure to State a Claim</u>

Defendants next move for dismissal under Rule 12(b)(6) contending that Plaintiffs fail to sufficiently allege any of their claims.  A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In reviewing a Rule 12(b)(6) motion, the Court must assume the truth of all factual allegations in the complaint and construe them most favorably to the nonmoving party.  *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006).

> [T]o be entitled to the presumption of truth, allegations in a complaint … may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.

*Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011).  To state a claim, Rule 8(a) "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("*Twombly*").  The factual allegations of the complaint need only "plausibly suggest an entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).  However, legal conclusions stated

7

in the  complaint need not be taken as true merely because they are couched as factual allegations.  *Twombly*, 550 U.S. at 555.  Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. Federal Deposit Insurance Corp.*, 139 F.3d 696, 699 (9th Cir. 1998).

Throughout their motion, Defendants argue for dismissal claiming that Plaintiffs' allegations are too vague.  As is evident from the discussion below, the allegations' detail and specificity surpass the notice pleading requirement of Rule 8(a).  Alternatively, Defendants argue for dismissal because some of Plaintiffs' allegations are asserted against Defendants collectively.  "[O]ur precedent does not prohibit collective pleading so long as the complaint gives defendants fair notice of the claims against them." *Briskin v. Shopify, Inc.,* 135 F.4th 739, 762 (9th Cir. 2025) (*en banc*).  Here, as in *Briskin*, Plaintiffs allege one course of conduct jointly pursued by Defendants.  (*See* Compl. ¶¶ 95-96.)  The operative complaint sufficiently describes each Defendant's role in the policy and practice of homeless camp abatement to provide the notice required by Rule 8(a).  (*See id.* ¶¶ 17-80, 97 *passim.*)

### A.      Federal Constitutional Claims (Claims 1 Through 4)

Plaintiffs assert four federal constitutional violations against Defendants under 42 U.S.C. § 1983.  To state a claim, a plaintiff must allege: (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a federal constitutional or statutory right.  *Jensen v. Lane County*, 222 F.3d 570, 574 (9th Cir. 2000).

#### 1.      Liability Under *Monell*

Defendants contend that Plaintiffs cannot state a claim because § 28 U.S.C. § 1983 does not provide for *respondeat superior* liability.  *See Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978).  "That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of

/ / / / /

municipal culpability and causation." *Board of County Commissioners v. Brown*, 520 U.S. 397, 406 (1997).

The limitation on *respondeat superior* liability arises from § 1983's causation requirement, which limits liability to "those state officials who subject, or cause to be subjected, an individual to a deprivation of his federal rights." *Lacey v. Maricopa County,* 693 F.3d 896, 915 (9th Cir. 2012) (*en banc*). This requirement is met when a defendant personally participates in depriving the plaintiff of federal rights or "set[s] in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Id*. Furthermore, a government entity can be found liable for the actions of its agents where (1) the constitutional violation at issue is the product of a policy, practice, or custom of the municipality; (2) a municipal policy maker ratifies the action; or (3) the action is the product of a failure to train. *See Monell*, 436 U.S. at 691; *see also Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir. 1995); *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

Plaintiffs contend that Defendants engage in joint homeless abatement operations, and that these operations typically involve "warrantless, coordinated raids on encampments during which Defendants' agents confiscate, destroy, or discard Plaintiffs' personal property[.]" (Compl. ¶¶ 95-96.) Plaintiffs allege numerous such coordinated operations which follow the same pattern and span more than five years. (*See id.* ¶¶ 17-80 *passim; see also id.* ¶ 97.) These allegations are sufficient at the pleading stage to establish a policy, practice, or custom for purposes of *Monell* liability. *See Menotti v. City of Seattle,* 409 F.3d 1113, 1147 (9th Cir. 2005) ("[A] municipal policy may be inferred from widespread practices or evidence of repeated constitutional violations for which the errant officers were not discharged or reprimanded."); *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992) ("longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity").

/ / / / /

The Caltrans Defendants argue that this is not sufficient to allege liability against them. The Court disagrees. The facts discussed in section II. above regarding the Caltrans Defendants' role in the coordinated homeless encampment removal, are sufficient to show that they set in motion a series of acts by their subordinates. Given that Caltrans settled at least two prior class actions and agreed that the same homeless abatement operations were illegal (Compl. ¶ 113 & n. 16; *see also id.* ¶ 103 & n.14), the Court can reasonably infer that the Caltrans Defendants knew, or reasonably should have known, that the continued participation in such operations would cause their employees to continue inflicting constitutional injuries.

For the foregoing reasons, Defendants' *Monell* arguments are rejected.

### 2. Unreasonable Search and Seizure

Plaintiffs allege that Defendants seize, discard, and destroy Plaintiffs' personal property without a warrant. Warrantless seizure of personal property stored by homeless individuals in a public space violates their Fourth Amendment right against unreasonable searches and seizures. *Garcia v. City of Los Angeles,* 11 F.4th 1113, 1118-19 (9th Cir. 2021); *Lavan v. City of Los Angeles,* 693 F.3d 1022 (9th Cir. 2012). Similarly, "the government may not summarily destroy unabandoned personal property of homeless individuals that is kept in public areas." *Garcia,* 11 F.4th at 1124.

Defendants argue that this case is distinguishable from *Garcia* and *Lavan* because Defendants post notices and "there was no summary destruction of property. Notices were posted by the Defendants prior to abatement." (Mot. at 25.) Defendants also contend that Plaintiffs' property is abandoned and therefore not subject to Fourth Amendment protection. These arguments ignore Plaintiffs' factual allegations.

Plaintiffs allege that Defendants' usual practice is to arrive unannounced (*see, e.g.,* Compl. ¶¶ 17, 21, 29, 33, 36, 45, 47, 49, 60, 68, 71, 97 (at p. 33, 36, 38, 39, 40, 42)) with trash compactor trucks and destroy personal property on the spot even when Plaintiffs plead and attempt to save it (*id.* ¶ 109; *see also, e.g., id.* ¶¶ 17, 29, 33, 36, 40, 46-47, 49,

10

53, 55, 61, 72, 79, 97 (at p. 32, 34, 35, 36, 45)). On rare occasions when Defendants provide notice, they arrive on a different date. (*See, e.g., id.* ¶ 111 (Defendants arrived early in the morning four days before the noticed date and tossed Plaintiffs' property into trash compactor trucks on the spot.); *see also id.* ¶ 64.) Even if, as Defendants contend, applicable municipal codes require them to post advance notice, Plaintiffs allege that, as a pervasive practice, Defendants do not follow these code provisions. The mere existence of notice requirements on the books does not insulate Defendants from liability. *See Menotti*, 409 F.3d at 1147 (A plaintiff can establish an official policy "by showing a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity[.]").)

### 3. Procedural Due Process

Plaintiffs claim that Defendants seize their personal property without due process. Even if, assuming solely for the sake of argument, Defendants' seizure of Plaintiffs' personal property comported with the Fourth Amendment, the Fourteenth Amendment Due Process Clause "requires law enforcement to take reasonable steps to give notice that the property has been taken so that the owner can pursue available remedies for its return." *Lavan*, 693 F.3d at 1032. Defendnats contend that they provide adequate post-deprivation remedies, thus negating a due process claim. However, their arguments again ignore Plaintiffs' factual allegations.

As alleged, Defendants' usual practice is to destroy Plaintiffs' personal property on the spot, thus precluding Plaintiffs from retrieving their belongings. (*See* Compl. ¶ 109; *see also, e.g., id.* ¶¶ 21, 25, 46, 55, 58, 72, 97 (at p. 32-33, 35-36, 39).) Even if notice of procedure to reclaim were provided, it would be futile, as the property is destroyed before it can be reclaimed. Plaintiffs further allege that typically Defendants do not provide any notice or information on how to reclaim (*see, e.g., id.* ¶¶ 20, 29, 45, 49, 55, 58, 67, 68, 71, 76) any property which is not immediately destroyed (*see, e.g., id.* ¶¶ 103, 106; *see also, e.g., id.* ¶¶ 20, 26, 45, 58, 97 (at p. 38, 43-44)). On rare occasions when such notice is

posted, the necessary information is missing or misleading.  (*See id.* ¶¶ 107-08, 118; *see also, e.g., id.* ¶¶ 25, 26, 36, 64, 80, 97 (at p. 35, 42, 45), 111, 114-15.)  On even fewer occasions when the notice includes the necessary information, and Plaintiffs request return of their property, the property is not returned.  (*See id.* ¶¶ 107 & n.15; *see also, e.g., id.* ¶¶ 26, 97( at p. 37); *see also* ECF No. 35-2, Claim Against the County of San Diego at 1).)  Only on one occasion were Plaintiffs able to see their belongings again.  When Plaintiffs arrived at the agreed location to retrieve their property, the property from the entire encampment was dumped on a single heap after it had been damaged or destroyed, and the valuables were missing.  (Compl. ¶¶ 97 (at p. 41-42), 114-15.)  Based on the foregoing, Plaintiffs have sufficiently alleged a due process violation.

### 4.     Equal Protection

Plaintiffs also claim that Defendants violate the Equal Protection Clause of the Fourteenth Amendment.  The Equal Protection Clause states that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  It ensures that "all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).  While it "does not forbid classifications[, it] keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike."  *Nordlinger v. Hahn,* 505 U.S. 1, 10 (1992).  Its protections "apply to administrative as well as legislative acts."  *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 597 (2008).

> As a general rule, legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality.  [U]nless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest.

*Nordlinger,* 505 U.S. at 10.

12

Plaintiffs allege that Defendants' actions "disproportionately affect[] a suspect class and impinge[] on the exercise of [their] fundamental right [to travel]." (Compl. ¶¶ 165-66.) In response to Defendants' dismissal arguments, Plaintiffs retracted their contention that the violation is based on impingement of a fundamental right to travel. In their opposition they recast the claim, stating that "Plaintiffs do not allege burdens on movement but unequal enforcement and discriminatory handling of property." (Opp'n at 19.) Their brief argues a new theory of equal protection based on the difference in handling property seized from homeless individuals as compared to those who are not homeless. (*Id.* at 18.) Plaintiffs also no longer contend that they are being discriminated against based on an inherently suspect characteristic and concede that rational basis review applies. (*Id.* at 19.)

To state a claim for disparate treatment under rational basis review, Plaintiffs must allege that "they have been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Engquist,* 535 U.S. at 601. To be similarly situated, different persons or groups must be "in all relevant respects alike." *Nordlinger,* 505 U.S. at 10.

Although the Complaint describes in detail how Plaintiffs are treated under Defendants' customs and policies (*see* Compl. ¶¶ 149-55; and discussion in sections 2. and 3. above), it does not identify a similarly situated group or describe the difference in treatment. The Complaint therefore does not state a claim for violation of the Equal Protection Clause.

### 5.   State-Created Danger

Plaintiffs maintain that Defendants' policy and custom of personal property seizure and destruction increases their exposure to harm by depriving them of necessities for survival. The "substantive component" of the Fourteenth Amendment's Due Process Clause "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Polanco v. Diaz,* 76 F.4th 918, 925

(9th Cir. 2023). "[U]nder the state-created-danger doctrine, state actors may be liable for their roles in creating or exposing individuals to danger they otherwise would not have faced." *Id.* at 926. To state a due process claim under the state-created-danger doctrine, a plaintiff must allege that the defendant's "affirmative conduct … exposed him to an actual, particularized danger that he would not otherwise have faced[,]" and that the defendant "acted with deliberate indifference to that known or obvious danger." *Id.*

Defendants argue that Plaintiffs' claim lacks factual allegations. This contention is belied by dozens of paragraphs detailing individual Plaintiffs' experiences. Plaintiffs allege that Defendants actively prevent them from retaining their personal property and typically seize or destroy it on the spot. (*See* Compl. ¶¶ 103, 105 and citations in sections 2. and 3. above.) Even without Plaintiffs' pleas to retain these times, the risk of harm is foreseeable when the items taken are crucial necessities for protection from the elements, such as tents, blankets, and clothing (*see id. passim* ¶¶ 17-80, 97); prescription medications (*id.* ¶¶ 36, 97 (at p. 33, 40, 43)), including insulin (¶¶ 29, 67), and assistive devices such as dentures (*id.* ¶¶ 33, 46, 49, 97 (at p.32)) or a walker (*id.* ¶ 41); work tools (*see, e.g., id.* ¶¶ 17, 46, 49, 59, 75, 79, 97 (at p. 34, 37-38)); and identification documents such as birth certificates, social security cards, and driver's licenses (*see, e.g., id.* ¶¶ 20, 46, 49, 55, 97 (at p. 31-33)). Moreover, Defendants' operations often coincide with times of extreme cold or heat, which further heightens the risk of harm. (*See id.* ¶ 117.) Defendants take no steps to mitigate the foreseeable risks caused by their activities, as they offer no services or shelter (*see, e.g., id.* ¶¶ 20, 29, 33, 53, 61, 67, 117), and the sized property is not returned (*see* discussion in section 3. above).

Defendants further contend that Plaintiffs fail to allege specific intent to expose them to increased danger. Plaintiffs are not required to allege specific intent but deliberate indifference to a known or obvious danger. *Polanco,* 76 F.4th at 926. Deliberate indifference requires a showing that Defendants "disregarded a known or obvious consequence of [their] action." *Patel v. Kent Sch. Dist.,* 648 F.3d 965, 974 (9th

Cir. 2011).  Based on the alleged facts, it is obvious that Defendants' actions increase the risk to Plaintiffs' survival.

Defendants next argue that Plaintiffs were already homeless and therefore already exposed to a heightened risk.  Plaintiffs must allege that Defendants' action affirmatively placed them "in a position of danger [which they] would not have otherwise faced." *Henry A. v. Willden,* 678 F.3d 991, 1002 (9th Cir. 2012).  As alleged, Plaintiffs owned certain property needed for survival, which Defendants seized or destroyed.  Even when Plaintiffs obtain replacements for the items taken, the homeless abatement operations are ongoing, and Defendants take or destroy them again.  (*See, e.g.,* Compl. ¶¶ 45-47, 78, 97 (at p. 32, 36, 44).)  This is sufficient to allege that Defendants affirmatively take actions to significantly increase the risks facing Plaintiffs.  *See, e.g., Penilla v. City of Huntington Park*, 115 F.3d 707, 710 (9th Cir. 1997) (Although Penilla was already seriously ill before the defendants took any action, the plaintiff stated a claim because defendants' action further increased the risk.)

Finally, Defendants rely on the dissent from denial of panel rehearing and rehearing *en banc* in *Sacramento Homeless Union v. City of Sacramento*, 115 F.4th 1149 (Mot. at 32; ECF No. 38, "Reply" at 11 (citing *Sacramento Homeless Union,* 115 F.4th at 1154)).  Rehearing was denied because the interlocutory appeal became moot. *Sacramento Homeless Union,* 115 F.4th at 1149.  *Sacramento Homeless Union* is therefore not binding and not persuasive.

### 6. Right to Association

Plaintiffs also claim that Defendants violate their right to association by forcing them to leave their encampments and move out of East San Diego County.  They "assert a right to maintain expressive and survival communities that exist by necessity on public land."  (Opp'n at 22.)  Plaintiffs rely on the First and Fourteenth Amendment protection of familial and expressive associations.

/ / / / /

15

The Constitution protects the

> "freedom of association" in two distinct senses. In one line of decisions, the Court has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme. In this respect, freedom of association receives protection as a fundamental element of personal liberty. In another set of decisions, the Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion. The Constitution guarantees freedom of association of this kind as an indispensable means of preserving other individual liberties.

*Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984); *see also Keates v. Koile,* 883 F.3d 1228, 1236 (9th Cir. 2018) (familial association); *Moore v. City of East Cleveland*, 431 U.S. 494, 499 (1977) (same). Defendants argue that Plaintiffs do not fall within either protected category.

Plaintiffs allege that Defendants "are attempting to prevent, and effectively [are] preventing[, them] from 'being present' in the public areas … where they and their friends reside, when no alternatives exist." (Compl. ¶ 176.) Specifically, "Defendants' actions have removed, or are designed to remove, Plaintiffs from their entire support network …, family, and friends." (*Id*. ¶ 179.) However, Plaintiffs do not allege that any of their encampments constitute a familial association or primarily comprise of familial associations; instead, as alleged, encampments are communities created based on a common location and need for living space. (*See* Compl. ¶¶ 17-80 & 97 *passim*; *see also* Opp'n at 21.)

Although the right to familial association is not limited to the nuclear family, *Moore*, 431 U.S. at 498-99, 504-05, it encompasses only "certain kinds of highly personal relationships," *Roberts*, 468 U.S. at 619-20. These relationships distinguish themselves "by such attributes as relative smallness, a high degree of selectivity in decisions to begin

16

and maintain the affiliation, and seclusion from others in critical aspects of the relationship." *Id*. at 620. The encampment communities described in the Complaint do not reflect these distinguishing characteristics. Furthermore, to the extent homeless encampments may contain familial associations, Plaintiffs do not allege that Defendants' orders to move away preclude the members from moving away together. (*See* Compl. ¶ 179.) Plaintiffs therefore do not allege that Defendants interfere with their constitutional right to familial association.

Plaintiffs' alternative theory is that Defendants interfere with their expressive association. The Supreme Court has "long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts,* 468 U.S. at 622. The right to expressive association is limited to participation in constitutionally protected expressive activities. *Santopietro v. Howell*, 73 F.4th 1016, 1025 (9th Cir. 2023).

Plaintiffs allege that Defendants' orders to vacate the encampments interfere with their participation in expressive activities in East San Diego County. (Compl. ¶¶177-78.) Plaintiffs do not allege that the encampments are associations created for the purpose of engaging in protected expressive activities. They also do not allege that they are prevented from participating in expressive activities, but only that their participation in expressive activities in East San Diego County is more difficult if they are forced to move out of the area. Accordingly, they have not alleged a violation of their constitutional right to expressive association.

**B.      State Law Claims**

1.      <u>State Constitutional Claims (Claims 5 Through 9)</u>

Initially Defendants argue that Plaintiffs cannot state any claim under the California Constitution because the relevant provisions do not allow for damages. Although damages are one of the requested forms of relief in this action (*see* Compl. at

87), Plaintiffs do not seek damages for any violation of the California Constitution (*see* Opp'n at 29-30; *see also* Compl. ¶¶ 183, 188, 194, 200, 205). *See Katzberg v. Regents of University of California*, 29 Cal.4th 300, 307 (2002) (declaratory and injunctive relief available for California constitutional violations).

Defendants also maintain that Plaintiffs' state constitutional claims fail for the same reasons as their federal constitutional claims. This argument is rejected to the extent Plaintiffs' federal constitutional claims survive Defendants' motion. (*See* section A. above.) The claims Plaintiffs assert under the California Constitution whose federal equivalents are dismissed in section A. above, or whose federal equivalents Plaintiffs are not asserting at all, are based on the cruel or unusual punishment, equal protection, and inverse condemnation provisions of the California Constitution (claims 6, part of claim 7, and claim 9, respectively).

#### a.    Cruel or Unusual Punishment

Plaintiffs claim that Defendants violate California's prohibition against cruel or unusual punishment. Their theory is that Defendants' operations constitute inhumane punishment of homeless individuals who have no alternative shelter. (Compl. ¶ 187; Opp'n at 32.) Plaintiffs expressly do not base their claim on the contention that homelessness is a status, as such claim would not be cognizable. (*See* Opp'n at 32 (citing *Tobe v. City of Santa Ana*, 9 Cal.4th 1069 (1995), and *People v. Kellogg,* 119 Cal. App. 4th 593 (2004).) Plaintiffs also make clear that they "challenge administrative practices, not criminal penalties." (Opp'n at 32.) They claim that Defendants' policies and practices of administrative enforcement are punitive because they subject homeless individuals to severe harm by taking and destroying the property they need to survive outdoors and exposing them to life-threatening conditions. (*Id*.)

/ / / / /

18

A claim of cruel and/or unusual punishment "involves *two* questions; first, whether the sanction is punishment, and second, if so, whether it is cruel and/or unusual."[6] *In re Alva*, 33 Cal.4th 254, 292 n.21 (2004) (emph. in orig.). Only if the challenged government action is punishment, does the Court proceed to the second question whether it is cruel or unusual. *See id.* Defendants argue that their administrative enforcement actions are not punishment.

Although the scope of protection under California Constitution is potentially broader than the Eighth Amendment, the California Supreme Court has "never suggested that article I, section 17 employs a different or broader definition of 'punishment' itself than applies under the Eighth Amendment." *Alva*, 33 Cal.4th at 291. "Few decisions of [California Supreme Court], or of the United States Supreme Court, have discussed what constitutes punishment in the specific context of the Eighth Amendment and its California counterpart." *Id.* at 280. The parties cite no binding authority on the issue of whether administrative homeless abatement practices are punitive, and the Court is aware of none.

Citing *In re Alva*, Defendants argue that the alleged practices are not punitive. *Alva* held that California Penal Code § 290, which required registration of convicted sex offenders, was regulatory in nature and did not impose punishment for purposes of the federal and California constitutional provisions. Because the underlying legal provisions alleged here (*see* Compl. ¶ 125) and the impact of Defendants' enforcement on Plaintiffs differ in material respects from California Penal Code § 290, the *Alva* holding by itself does not support granting Defendants' motion.

/ / / / /

---

[6]  "[A]rticle I, section 17 of the California Constitution bans 'cruel *or* unusual punishment,' while the federal clause prohibits only 'cruel *and* unusual punishments.'" *In re Alva*, 33 Cal.4th 254, 291 (2004) (emph. in orig.).

19

Nevertheless, *Alva* sets forth the relevant considerations to determine if government action is punitive.  They are the government's legislative purpose, the implementing provisions of the laws Defendants are enforcing, and the impact of the enforcement on Plaintiffs.  *See Alva*, 33 Cal. Cal.4th at 286-90.  Plaintiffs allege sufficient facts to enable Defendants to apply the analysis indicated in *Alva.*  Plaintiffs identify the municipal code, local ordinance, and state statutory provisions Defendants are enforcing (Compl. ¶ 125) and allege facts, including property destruction, exposure to the elements, and move-away orders, to support their contention that Defendants' enforcement is punitive (*id.* ¶¶ 185, 187).  Defendants do not analyze these allegations as indicated in *Alva* and therefore present no persuasive reason to grant their motion.

> b.  *Equal Protection*

Plaintiffs further claim that Defendants violate their equal protection rights under the California Constitution.  Cal. Const., art. I, § 7(a) ("A person may not be … denied equal protection of the laws[.]").  "The right to equal protection under both the federal and California Constitutions is intended to ensure that the government does not treat a group of people unequally without some justification."  *People v. Cannon*, 18 Cal.5th 497, 517 (2025) ("*Cannon*").  As under federal law, under California law, "any unequal treatment that is based on suspect classifications or that significantly burdens a fundamental right or interest is subject to strict scrutiny analysis."  *Id.*  Otherwise, "the legislation is presumed valid unless the challenger can establish there is no rational relationship between a disparity in treatment and some legitimate government purpose."  *Id.*

Defendants argue that Plaintiffs' California equal protection claim should be dismissed for the same reason as the federal claim because "the equal protection analysis under the California Constitution is substantially similar to analysis under the federal Equal Protection Clause."  *Olson v. State of California*, 104 F.4th 66, 76 (9th Cir. 2024).  Plaintiffs counter that the California Constitution offers broader protection.  Although the

20

California equal protection clause "is possessed of an independent vitality" which may require an analysis different from the federal standard, this applies only to the analysis implicating fundamental rights. *Cannon*, 18 Cal.5th at 521-22. As noted in section A.4. above, Plaintiffs do not contend that Defendants' policies and customs infringe on their fundamental rights. Accordingly, like their federal equal protection claim, Plaintiffs' state law claim calls for rational basis review, and is dismissed for the same reason as their federal claim.

### c.   Inverse Condemnation

Next, Plaintiffs allege that Defendants' taking and destruction of personal property violates the just compensation clause of the California Constitution. Cal. Const. art. I § 19(a) ("Private property may be taken or damaged for a public use and only when just compensation … has first been paid to … the owner.").

The "just compensation" clause "is concerned, most directly, with the state's exercise of its traditional eminent domain power[.]" *Customer Company v. City of Sacramento*, 10 Cal.4th 368, 377 (1995). "Eminent domain is the right of the people or government to take private property for public use." *Id.* n.3. "An inverse condemnation action is an eminent domain proceeding initiated by the property owner rather than the condemner." *Id.* n.4.

> [A]n inverse condemnation action may be pursued when the state or other public entity improperly has taken private property for public use without following the requisite condemnation procedures—as when the state, in constructing a public project, occupies land that it has not taken by eminent domain, or when the state takes other action that effectively circumvents the constitutional requirement that just compensation be paid before private property is taken for public use.

*Id.*

Defendants argue that Plaintiffs' personal property was not taken for public use but was destroyed incident to homeless abatement. Based on the allegations in the

21

Complaint, destruction of Plaintiffs' property is not incidental.  Plaintiffs allege that Defendants typically approach homeless encampments with trash contractor trucks, suggesting that destruction of property is a planned part of the operation.

Furthermore, Plaintiffs maintain that their property is destroyed to advance public objectives, *i.e.,* clearing homeless encampments and regulating public land, and is therefore taken for public use.

> A public use is a use which concerns the whole community as distinguished from a particular individual or a particular number of individuals; public usefulness, utility or advantage; or what is productive of general benefit; a use by or for the government, the general public or some portion of it.

*Miller v. City of Palo Alto,* 208 Cal. 74, 77 (1929) (quoted in *Customer Co.*, 10 Cal.4th at 381).  Accordingly, damage resulting from public projects may be compensable under the "just compensation" clause.  *See Holtz v. Superior Court (San Francisco Bay Area Rapid Transit District),* 3 Cal.3d 296, 303-04 (1970).

Defendants rely on *Customer Company v. City of Sacramento*, which held that a store owner could not prevail on an inverse condemnation claim arising from damage to his store caused by law enforcement officers in pursuit of a suspect.  10 Cal.4th at 371. The holding is based on the police power exception, which provides that the government "must be permitted to respond to emergency situations that endanger public safety unhampered by the specter of constitutionally mandated liability for resulting damage to private property."  *Id.* at 384-85; *see also* discussion at 383-84 (citing *Holtz*, 3 Cal.3d at 303-04).  Defendants do not contend that their actions were prompted by an emergency. Moreover, the police power exception is premised on a "valid exercise of the state's police power."  *Customer Co.,* 10 Cal.4th at 380-81; *see also Holtz*, 3 Cal.3d at 304-05. By contrast, Plaintiffs' lawsuit is based on the contention that Defendants' seizure and destruction of property is *not* a valid exercise of the state's police power.  (*See* discussion / / / / /

in sections A.2., 3. & 5. above.)  Based on the foregoing, Defendants have failed to advance a persuasive argument to dismiss Plaintiffs' inverse condemnation claim.

### 2. Other State Law Claims (Claims 13 Through 15)

#### a. *Claim Presentation Under the Government Claims Act*

Defendants contend that Plaintiffs' remaining state law claims should be dismissed for failure to comply with claim presentation requirements under California Government Claims Act, Cal. Gov't Code §§ 900 *et seq.*[7]

> The Government Claims Act established a standardized procedure for bringing personal injury claims against local governmental entities.  As a general rule, no suit for money or damages may be brought against a public entity until a written claim, known as a government claim, is presented to and rejected by that entity.

*Hernandez v. City of Stockton,* 90 Cal.App.5th 1222, 1230 (2023) (citing Cal. Gov't Code §§ 905, 945.4).  "The claim presentation requirement does not apply to non-pecuniary actions, such as those seeking injunctive, specific, or declaratory relief." *Stronghold Engineering, Inc. v. City of Monterey,* 96 Cal.App.5th 1203, 1208 (2023).

Plaintiffs do not seek money or damages under their fourteenth cause of action alleging violation of the Tom Bane Civil Rights Act, Cal. Civ. Code § 52.1 ("Bane Act"). (*See* Compl. ¶ 247.)  Defendants' argument is therefore rejected as to the Bane Act claim.

Plaintiffs seek damages as well as injunctive and declaratory relief under their thirteenth and fifteenth causes of action alleging violation of mandatory duty, Cal. Gov't Code § 815.6, and common law conversion.  (Compl. ¶¶ 241, 251.)  When a request for damages is merely incidental to the request for injunctive, specific, or declaratory relief, the claim presentation requirement does not apply.  *Gatto v. County of Sonoma*, 98

---

[7]    As no state law claims are alleged against the Caltrans Defendants, this argument does not apply to them. (*See* Compl. ¶¶ 84, 85; Opp'n at 13-14; *see also* discussion in section II. above.)

23

Cal.App.4th 744, 761-62 (2002).  The inquiry whether a request for damages is incidental, or inversely, whether the request for injunctive and declaratory relief is incidental, is a case-specific one.  *See id.* at 760 ("where the plaintiff *does* seek to recover damages from a public entity *and that is his or her chief purpose*" (emph. in orig.)); *see also* discussion *id.* at 762-63.  Here, injunctive relief is of primary importance because Defendants' alleged conduct is ongoing.  Even if Plaintiffs were to recover damages in this action, they would suffer further damage until Defendants' conduct is stopped.  The Court therefore finds that, as alleged, the request for damages is incidental to Plaintiffs' request for injunctive relief.

Defendants' argument that state law claims should be dismissed for failure to comply with the claim presentation requirements is rejected.

### b.     Bane Act

Plaintiffs allege that Defendants violate the Bane Act, which provides that "[a]ny individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States … has been interfered with, or attempted to be interfered with …, may institute and prosecute in their own name and on their own behalf a civil action[.]"  Cal. Civ. Code § 52.1(c).  The requisite interference or attempted interference must be by means of "threat, intimidation, or coercion[.]"  *Id.* § 52.1(b).

Defendants argue that the claim should be dismissed because Plaintiffs do not allege threat, intimidation, or coercion.

> Speech alone is not sufficient to support an action brought pursuant to subdivision (b) or (c), except upon a showing that the speech itself threatens violence against a specific person or group of persons; and the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence had the apparent ability to carry out the threat.

/ / / / /

24

Cal. Civ. Code § 52.1(k); *see also Julian v. Mission Community Hospital,* 11 Cal.App.5th 360, 395 (2017) ("Speech is insufficient to establish the requisite threat unless it includes threat of violence.").

Plaintiffs allege that Defendants arrive at homeless encampments with trash compactor trucks into which they immediately start tossing their belongings. (*See* citations in sections A.2. and 3. above.) Defendants threaten Plaintiffs with citation and arrest if they do not immediately move along. (*Id.* ¶ 109; *see also passim id.* ¶¶ 17-79, 111.) "Plaintiffs are given no opportunity to gather their belongings, despite requesting such[, and are] forced to watch as everything they own is trashed, while Defendants hurl insults, profanities, and slurs." (Compl. ¶ 109.) The verbal threats and insults are accompanied by acts of cruelty and violence. Plaintiffs allege that these actions are "intended to frighten and intimidate[.]" (*Id.* ¶ 129.) For example, a Plaintiff who tried to retrieve some of her belongings before vacating the encampment was "physically prevented from doing so." (Compl. ¶ 33.) A Defendants' agent "ripped" a necklace from a Plaintiff's neck and threw it in the trash. (*Id.* ¶ 97 at 33.) Another Plaintiff asked if she could keep her walker to be able to vacate the encampment; however, Defendants immediately destroyed it, and she was "forced to crawl on the ground away from the area." (*Id.* ¶ 41.) A Plaintiff who was suffering from the after-effects of stroke was "forcibly removed from her tent" during one of Defendants' abatement operations. (*Id.* ¶ 67.) On a subsequent occasion, Defendants arrived early in the morning without notice and began cutting into her tent with a knife while she was inside. (*Id.* ¶¶ 68, 97 (at p. 44).) During another early morning operation, Defendants arrived when Plaintiffs were asleep. (*See, e.g., id.* ¶ 36.) When a Plaintiff asked if she could "relieve herself," they denied her request, and Plaintiff was forced to stay in place. (*Id.* ¶¶ 36-37.) Defendants laughed at her when she "involuntarily urinated on herself." (*Id.* ¶ 37.) Plaintiffs describe Defendants' abatement operations as a "campaign of terror." (*Id.* ¶ 102.) Given the pervasiveness of these occurrences, the Court infers that they are a part and parcel of

Defendants' custom and practice of homeless abatement.  Plaintiffs allege sufficient facts to conclude that Defendants interfered with their rights by means of threat, intimidation, or coercion.

*c.*      *Mandatory Duty*

Next, Plaintiffs claim that by destroying personal property on the spot, and in some instances by taking property without notice of how to reclaim (*see* sections A.2. and 3. above), Defendants violate their mandatory duties under California Civil Code §§ 2080 *et seq.*  Defendants argue for dismissal claiming that Plaintiffs' property was abandoned.  This argument is rejected because it ignores allegations that Defendants refused Plaintiffs' pleas to retain their property.  (*See* section b. above.)

California law provides for liability of public entities when they fail to discharge a mandatory duty.  Cal. Gov't Code § 815.6:

> Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty.

"A mandatory duty is created only when an enactment requires an act that is clearly defined and not left to the public entity's discretion or judgment." *State Department of State Hospitals v. Superior Court (Novoa),* 61 Cal.4th 339, 350 (2015).

Defendants contend that they are immune from liability because any duty they have is discretionary.  The statute at issue here, Cal. Civ. Code § 2080.10, directs Defendants to store and document the property taken, and inform the owners how to claim it.  The actions required are clearly defined and require no exercise of discretion or judgment.  They are introduced by the word "shall," signifying their mandatory nature. Cal. Civ. Code § 2080.10.  In the context of Plaintiffs' allegations that the property was immediately destroyed or taken without instructions on how to reclaim, Plaintiffs sufficiently allege violation of Defendants' mandatory duty.

26

d.     *Conversion*

Plaintiffs also contend that by taking and/or destroying personal property, Defendants convert it.  Defendants argue for dismissal based on government tort immunity under California Government Code § 815.  Section 815 provides that "[e]xcept as otherwise provided by statute[, a] public entity is not liable for an injury[.]"  Cal. Gov't Code § 815.  "In the absence of a constitutional requirement, public entities may be held liable only if a statute is found declaring them to be liable."  *Hoff v. Vacaville Unified School District,* 19 Cal.4th 925, 932 (1998).

Plaintiffs assert their conversion claim under California common law.  (*See* Compl. at 82 ("Common Law Conversion").)  They argue that they can proceed with the claim notwithstanding § 815 because the "claim is rooted in statutory duties under Civil Code 2080[.]"  (Opp'n at 38.)  As discussed in section c. above, Plaintiffs can proceed on their statutory claim under Civil Code §§ 2080 *et seq.*  However, they are barred by government immunity from proceeding on a common law conversion claim.

**C.     Disability-Based Claims (Claims 10 Through 12)**

Several Plaintiffs allege that they are physically and/or mentally disabled.  (Compl. ¶¶ 17, 19, 39, 41, 44, 51-55, 66-68, 76.)  They claim that Defendants discriminate against them based on disability and fail to provide reasonable accommodations in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), § 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Rehabilitation Act"), and California Government Code § 11135.  Defendants seek dismissal of these claims.

1.     <u>Discrimination Against Persons with Disabilities</u>

Plaintiffs claim discrimination in violation of the ADA and California Government Code § 11135, while Defendants' motion addresses only Plaintiffs' allegations under the ADA.  (*See* Mot. at 34-37.)  California law potentially provides greater protection than the ADA.  *See* Cal. Gov't Code § 11135(b).  Accordingly, Defendants' motion is denied to the extent the tenth cause of action is based on state law.

The ADA prohibits discrimination by public entities:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

Disabled Plaintiffs allege discrimination in two areas of Defendants' activities – provision of services or shelter to the homeless, and encampment abatement operations. (Compl. ¶ 208.) As to the former category, provision of services or shelter, Plaintiffs allege that Defendants offer no such service, program, or activity. (Compl. ¶ 117; *see also, e.g., id.* ¶¶ 20, 29, 33, 53, 61, 67, 97 (at p. 41, 43, 44).) In their opposition, Plaintiffs retreat from the theory based on services and shelter, as they assert that they "seek equal access to *existing* procedures." (Opp'n at 25 (emph. in orig.) (inaccessible notices, time allotted to vacate, and property retrieval procedures).) "[P]ublic entities are not required to create new programs that provide heretofore unprovided services to assist disabled persons." *Townsend v. Quasim,* 328 F.3d 511, 518 (9th Cir. 2003). Accordingly, to the extent Plaintiffs' tenth cause of action is based on homeless services or shelter, Defendants' motion is granted.

As to encampment abatement operations, disabled Plaintiffs allege, for example, that they need assistance and additional time because they cannot comply with Defendants' demands to immediately vacate the encampment. (*See* Compl. ¶¶ 210, 212; *see also, e.g., id.* ¶¶ 41, 67, 68.) They also allege that Defendants' practice of destroying personal property imposes greater hardship on them because they depend on medications and mobility assistance devices. (*See id.* ¶¶ 215, 217; *see also* citations in section A.5. above.)

Defendants do not dispute that this is discrimination. Instead, they argue that the claim should be dismissed because homeless abatement operations are not activities

28

which exclude disabled Plaintiffs or could confer a benefit upon them.  The argument is unavailing because the ADA extends its protection to disabled individuals who are "subjected to discrimination" by a public entity "by reason of such disability."  42 U.S.C. § 12132; *see also Where Do We Go Berkeley v. California Department of Transportation,* 32 Cal.4th 852, 863 (9th Cir. 2022) ("*Berkeley*") (prohibiting intentional discrimination).  Plaintiffs allege that Defendants "willfully and intentionally" discriminate against individuals with disabilities.  (Compl. ¶ 212; *see also id.* ¶¶ 210, 215-17.)

Alternatively, Defendants maintain that the ADA does not apply because encampment abatement operations are not "services, programs, or activities" under § 12132.  This argument is rejected because the ADA's prohibition on discrimination "applies to a wide range of public functions" and "brings within its scope anything a public entity does." *Berkeley,* 32 Cal.4th at 861.  This includes "the way entities enforce the law," including "clearing [of homeless] encampments." *Id.*

Finally, Defendants complain that Plaintiffs' ADA discrimination claim is inconsistent with their Fourth Amendment and due process claims.  Those claims are premised on the contention that Defendants provide no notice or inadequate notice of homeless abatement operations and property retrieval procedures.  (*See* discussion in sections A.2. and 3. above.)  The ADA discrimination claim is based on the allegation that on rare occasions when notice is given, it is inadequate.  (*See* Compl. ¶ 212.)  Accordingly, the claims are not inconsistent.[8]

/ / / / /

---

[8]   Regardless, Rule 8 allows pleading inconsistent claims.  Fed. R. Civ. Proc. 8(d)(3) ("A party may state as many separate claims … as it has, regardless of consistency.").

## 2.    Failure to Provide Reasonable Accommodations

Disabled Plaintiffs next contend that Defendants violate the ADA by failing to provide reasonable modifications to their policies and practices to accommodate the needs of disabled Plaintiffs.  The ADA requires that

> A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.

28 C.F.R. § 35.130(b)(7)(i).

Defendants argue that Plaintiffs fail to identify any relevant reasonable accommodation.  This argument ignores Plaintiffs' allegations.  Plaintiffs suggest that Defendants should accommodate them by providing reliable notice of abatement actions in plenty of time, refraining from destroying mobility devices, allowing the mobility-impaired homeless individuals to keep their mobility devices, and providing more time to vacate the encampment and collect their belongings.  (*Id.* ¶¶ 210, 212, 222, 224, 226; *see also id.* ¶¶ 39-41, 66-67, 97 (at p. 31-32, 40-41).)

The Caltrans Defendants argue that *Where Do We Go Berkeley v. California Department of Transportation* bars liability against them.  To the extent this argument is directed to provision of services or shelter to disabled Plaintiffs, the issue is addressed in section 1. above.  To the extent the argument is directed at other accommodations, *Berekeley* does not preclude liability.  *See Berkeley,* 32 Cal.4th at 861-62.  "The ADA requires only reasonable modifications that would not fundamentally alter the nature of the service provided."  *Id.* at 862; *see also* 28 C.F.R. § 35.130(b)(7)(i).  The Caltrans Defendants have made no persuasive argument that the requested accommodations would fundamentally alter the nature of Caltrans' involvement in homeless abatement.

Finally, Defendants seek dismissal because Plaintiffs request an open-ended injunction to halt homeless abatement operations (*see* Compl. at 86:22-25).  This is one

of several injunctions Plaintiffs are requesting. (*See id.* at 86.) Defendants do not contend that injunctive relief is unavailable for ADA violations. In ruling on a Rule 12(b)(6) motion, the court decides whether the plaintiff can state a claim for any relief. *See Navarro*, 250 F.3d at 732. Because Defendants have failed to show that the claim should be dismissed, Plaintiffs can proceed to litigate it. The Court need not decide at the pleading stage the precise form injunctive relief may take should Plaintiffs ultimately prevail.

### 3.   Violation of the Rehabilitation Act

The parties agree that the same legal standard applies under the Rehabilitation Act and the ADA, so long as the defendant is receiving federal financial assistance. (*See* Mot. at 35 (citing *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001)); Opp'n at 23 (citing same).). Plaintiffs allege that Defendants receive federal assistance for the relevant purposes. (Compl. ¶ 231.) Defendants do not dispute the sufficiency of this allegation and provide no arguments to dismiss the Rehabilitation Act claim which are not also asserted to dismiss the ADA claims. (*See* Mot. at 34-39.) Accordingly, Defendants' motion to dismiss the Rehabilitation Act claim is denied for the same reasons and to the same extent as their motion to dismiss the ADA claims.

**E.   Claims for Declaratory and Injunctive Relief (Claims 16 and 17)**

Defendants move to dismiss the stand-alone claims for declaratory and injunctive relief as unnecessary because they merely duplicate the remedies requested elsewhere in the complaint. As discussed above, several claims that can support declaratory and injunctive relief survive Defendants' motion. These claims are incorporated by reference into the stand-alone claims for declaratory and injunctive relief. (Compl. ¶¶ 252, 256.) Even if these stand-alone claims may be duplicative, they do not fail to state a claim under Rule 12(b)(6). Accordingly, Defendants' motion to dismiss them is denied.

/ / / / /

## IV.   Conclusion

For the reasons stated above, Defendants' motion is granted in part and denied in part.  The fourth claim for relief alleging violation of the right of association and the fifteenth claim for relief alleging common law conversion are dismissed in their entirety.  The second and seventh claims for relief are dismissed only insofar as Plaintiffs do not state an equal protection claim.  The tenth, eleventh, and twelfth claims for relief are dismissed only insofar as they are based on the theory that Defendants violate the ADA and the Rehabilitation Act by failing to provide homeless shelter or services.  Remedies recoverable against the Caltrans Defendants are limited to declaratory and injunctive relief.  The motion is denied in all other respects.  Plaintiffs' request for leave to file a fourth amended complaint is denied.  *See Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013).  No later than fourteen (14) calendar days after the filing of this Order, Defendants shall file and serve any answer to the complaint.

**IT IS SO ORDERED.**

Dated:  July 27, 2026

Hon. M. James Lorenz
United States District Judge

32